IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| I-10 BARKER CYPRESS, LTD. | § | CASE NO. 10-36582 |
| Debtor | § | (Chapter 11) |
| | § | |
| TAX ID. NO. xx-xxx3131 | § | |

**EMERGENCY MOTION OF DEBTOR FOR INTERIM ORDER AUTHORIZING
USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION**

**TO THE HONORABLE, LETITIA Z. PAUL UNITED STATES BANKRUPTCY JUDGE:**

**COMES NOW, I-10 Barker Cypress, Ltd.** ("Barker Cypress" or the "Debtor"), the Debtor, and files this, its *Emergency Motion of Debtor for Interim Order Authorizing Use of Cash Collateral and Providing Adequate Protection,* and in support thereof would respectfully show unto the Court the following:

I. STATEMENT OF JURISDICTION AND VENUE

1. This Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A) and (B).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

II. BACKGROUND AND DEBT STRUCTURE

3. On or about August 2, 2010, the Debtor filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code 11 U.S.C. § 101 et seq. Since the filing, the Debtor has continued to conduct its affairs as a debtor-in-possession.

4. **I-10 Barker Cypress, Ltd.** is a Texas limited partnership with its principal place of business in Houston, Harris County, Texas and with offices in Houston, Harris County, Texas.

5. The Debtor owns an 83,000 square foot shopping center on 17.2 acres of commercial land located in Houston, Texas (the "Property"). The Property has several free standing retail buildings located at 17748-17758 Katy Freeway, Houston, Harris County, TX 77084.

6. There is approximately Seventeen Million Three Hundred Thousand Dollars (~$17,300,000.00) in secured debt. Prior to the filing of the Petition, the Debtor's first lienholder, Compass Bank ("Compass"), had posted the Property for foreclosure. The Debtor remains in possession of the Property and continues to operate the Property.

7. The Debtor has no full-time employees. All daily operating and financial tasks are performed by employees of the management company, Peyton Cottrell Interests, Inc., whose payroll expenses are reimbursed by the Debtor.

8. The Debtor's one major secured creditor is Compass (the "Lienholder" or "Lender"). The Debtor contends that the real property which secures the indebtedness to the Lienholder is valued at approximately Twenty-Four Million Dollars (~$24,000,000.00) thus providing an equity cushion for the Lienholder.

9. Pursuant to the Assignment of Leases made part of the Deed of Trust dated February 14, 2007 (the "Compass Documents"), Compass has asserted a lien as to "all rents, income and profits arising from the Leases[1] and renewals thereof and together with all rents, income and profits for the use and occupation of the premises described in the Leases…"

---

[1] As set forth in the Assignment of Leases, the term "Leases" is defined as the lessor [I-10 Barker Cypress, Ltd.]'s interest in and to any and all lease agreements now or hereafter made and entered into covering (1) any or all of the space located in the improvements now or hereafter constructed on the…[Property], ….and (3) any of Assignor [I-10 Barker Cypress, Ltd.]'s rights with respect to the Property or improvements located thereon.

### III. DEBTOR'S MOTION FOR EMERGENCY HEARING

10. Concurrently with the filing of this document, the Debtor moves the Court for an emergency hearing on the early-case pleadings. An emergency hearing on such pleadings is necessary to prevent irreparable harm to the Debtor's Property and to ensure the Property can continue to operate.

11. Further, the Debtor would show the Court that the Debtor has an immediate need for authorization to use cash collateral in order to pay certain expenses (for the ongoing maintenance of the Property) which are due within the next fifteen (15) days. A list of same expenses is attached hereto as Exhibit "A."

### IV. REQUESTED RELIEF AND BASIS FOR RELIEF

12. Section 363(c)(2) provides that a debtor-in-possession may not use cash collateral unless an entity that has an interest in such cash collateral consents or the Court approves the use of such cash collateral. None of the parties that have or may have an interest in cash collateral have consented to the Debtor's use thereof. Section 363(o) provides that at a hearing on the use of cash collateral, the entity asserting an interest in the cash collateral has the burden of proof on the issue of the validity, priority, or extent of such interest; and the debtor-in-possession has the burden of proof on the issue of adequate protection. Rule 4001(b)(2) provides that the Court may not hold a final hearing on a motion to use cash collateral earlier than fifteen (15) days after service of the motion, but may authorize the use of cash collateral prior to a final hearing as necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

13. By this Motion, the Debtor requests that the Court schedule an emergency hearing and issue an interim order authorizing the use of the cash collateral for thirty (30) days as set

forth in the six (6) month projection attached hereto as Exhibit "B." The Debtor seeks interim authority, pursuant to §363 of the Bankruptcy Code, to use the cash collateral of Compass to maintain the Debtor's operations as a going concern and to avoid irreparable harm. The Debtor intends to use the interim period to negotiate a longer term cash collateral stipulation on acceptable terms. In general terms, the Interim Cash Collateral Order provides for the following during the Interim Cash Collateral period:

    a.    Use of the cash collateral in accordance with the budget (as attached hereto), with the balance of revenue, if any, being segregated.

    b.    Grants of non-priming adequate protection liens in all of the Debtor's assets (except avoidance actions) to secure any diminution in value of the Lender's collateral to the extent of the pre-petition lien and security interest, if any.

    c.    The acknowledgment of an "equity cushion" in favor of the Lender to the extent there is a failure of adequate protection.

    d.    A "bare bones" budget designed to (i) protect, preserve and maintain the property, (ii) collect revenue and (iii) administer the bankruptcy case.

14.    The Debtor has not attempted to identify the extent, priority and validity of the Lender's interests in the Cash Collateral. Therefore, by this Motion the Debtor moves the Court to enter an order authorizing interim use of the Cash Collateral, while reserving the right to object, if appropriate, to the extent, priority and validity of the Lender's interests and rights granted herein.

15.    Without authority to use cash collateral, the Debtor will be unable to pay its normal operating expenses and will thus be unable to keep the property secure. An interim order

will allow the Debtor to use the cash collateral to avoid irreparable harm to the Debtor and its operations and will give the Debtor the opportunity to reorganize.

16. To provide the Lender with adequate protection, the Debtor will maintain the going concern value of the Lender's collateral by using the Cash Collateral to continue to maintain, protect and preserve the Property. As additional protection for the Debtor's use of the Cash Collateral, the Debtor proposes to grant to the Lender, to secure any post-petition diminution in value of the Cash Collateral of the Lender, pursuant to Bankruptcy Code §§361 and 363, a replacement security interest in, and lien upon, all of the Debtor's right, title and interest in, to and under all property whether acquired by the Debtor prior or subsequent to the Petition Date (to the extent of the pre-petition liens), including property which, but for the operation of Bankruptcy Code §552 in the absence of this subparagraph would constitute pre-petition collateral of the Lender, and all proceeds thereof (the "Post-Petition Collateral") to secure an amount of the Lender's pre-petition claims equal to the diminution in value, if any, of the Lender's interest in pre-petition cash collateral (collectively, the "Adequate Protection Claims"). Said replacement liens will be subordinate only to prior, duly-perfected and non-avoidable liens as of the Petition Date. If, and to the extent of such adequate protection of the interests of the Lender in the Cash Collateral pursuant to any interim order proves insufficient, the Debtor proposes that the Lender have an allowed claim under §507(b) of the Bankruptcy Code in the amount of any such insufficiency.

17. Adequate protection serves to protect a secured creditor from diminution in the value of its interest in collateral during the period it is used by a debtor. *See Delbridge v. Production Credit Assoc. and Federal Land Bank*, 104 B.R. 824, 827 (E.D. Mich. 1989); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus. Corp.*, 58 B.R. 725, 736

(Bankr. S.D.N.Y. 1986); *see also In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990). Adequate protection is generally determined on a case by case basis, in light of the particular facts and circumstances presented. *See In re O'Connor*, 808 F.2d 1393, 1397 (10th Cir. 1987); *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985).

18. If the Debtor is not granted authority to use Cash Collateral, the Debtor will be unable to maintain its operations. The Debtor cannot maintain the value of its assets for the benefit of creditors without the ability to use cash collateral. In these circumstances, granting the relief requested herein is clearly warranted. An interim order on an emergency basis authorizing the Debtor to use Cash Collateral will avoid immediate and irreparable harm, will give the Debtor an opportunity to market the real property for sale in a manner in the best interests of the Debtor's estate, will inure to the benefit of all parties in interest and should be approved.

19. The Debtor's regular monthly operational needs and overhead requirements, on a continuing thirty (30) day business cycle (projected over the next six (6) months), are set forth in the attached Exhibit "B". The disruption in the Debtor's cash flow would potentially adversely affect the operations. The use of cash collateral is critical to the Debtor since, in order to collect the revenues, it must continue to operate and maintain the Property. With proper maintenance and operation of the Property, the secured claim of the Lender is adequately protected.

20. The Debtor needs immediate access to the revenues being collected from tenants in the Property. The Debtor must have immediate access to this income stream to maintain the Property and to fund a plan of reorganization.

V. REQUEST FOR INTERIM AND FINAL HEARINGS

21. An immediate need exists for the Debtor to obtain approval of the use of Cash Collateral in order to pay utilities, certain vendors and other ongoing expenses in the ordinary

course of operating its business. Without the immediate use of Cash Collateral, the Debtor's ability to operate the Property will be severely impaired, if not entirely precluded. A complete shutdown of the operations would result in the diminished value of collateral securing the interests of various creditors, and the possibility that unsecured creditors would receive no meaningful distribution. Accordingly, it is imperative that a hearing on the Debtor's request for interim authority to use Cash Collateral be set immediately.

22.     In accordance with Bankruptcy Rule 4001, the Debtor requests that the Court set a preliminary hearing on the use of Cash Collateral on an emergency basis so that the Debtor will be able to satisfy critical post-petition operating and maintenance expenses, and that at such preliminary hearing, the Court authorize the temporary use of Cash Collateral consistent with the Interim Budget in order to avoid immediate and irreparable harm to the Debtor's estate and its creditors.

23.     The Debtor also requests a final hearing as soon as the Court's schedule permits, following fifteen (15) days after service of this Motion.

24.     Counsel, where applicable, for the Lender has been provided electronic notice and/or a facsimile transmission of the bankruptcy filing and of the filing of this Motion.

**WHEREFORE,** the Debtor respectfully prays that this Court:

a.     Hold an emergency hearing on interim cash collateral use to avoid immediate and irreparable harm;

b.     Enter an order authorizing the Debtor to use Cash Collateral on an immediate basis and providing adequate protection to the Lender;

c.     Schedule a final hearing on Cash Collateral use;

    d.    Enter an order following the final hearing granting the Debtor authority to use Cash Collateral; and

    e.    Grant such other and further relief as is just and proper.

Respectfully submitted,

**JAMES JAMESON & ASSOCIATES**

By:   /s/ James B. Jameson
JAMES B. JAMESON
State Bar No. 10598500
3355 West Alabama Street, Ste. 1160
Houston, TX 77098
713-807-1705-Telephone
713-807-1710-Facsimile
**PROPOSED ATTORNEY FOR DEBTOR-IN-POSSESSION**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to the following party(ies) via electronic notice, facsimile or U.S. mail on this 6th day of August, 2010.

U.S. Trustee
515 Rusk, Ste. 3401
Houston, TX 77002

Jackson Walker, LLP
Attn: Bruce Ruzinsky
1401 McKinney Street
Houston, TX 77010-1900
bruzinsky@jw.com
*Counsel for Compass Bank*

   /s/ James B. Jameson
**JAMES B. JAMESON**