**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| I-10 BARKER CYPRESS, LTD. | § | CASE NO. 10-36582 |
| Debtor | § | (Chapter 11) |

**FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125**
**IN SUPPORT OF**

**DEBTOR'S PLAN OF REORGANIZATION**

**DATED DECEMBER 9, 2010**

**THIS FIRST AMENDED DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR IN THE ABOVE STYLED CASE (THE "DEBTOR," OR THE "COMPANY") AND DESCRIBES THE TERMS AND PROVISIONS OF THE DEBTOR'S PLAN OF REORGANIZATION, DATED OCTOBER 29, 2010 (THE "PLAN"). ANY TERM USED IN THIS FIRST AMENDED DISCLOSURE STATEMENT THAT IS NOT DEFINED HEREIN HAS THE MEANING ASCRIBED TO THAT TERM IN THE PLAN.**

**JAMES B. JAMESON**
State Bar No. 10598500
P. O. Box 980575
Houston, TX 77098
713-807-1705-Telephone
713-807-1710-Facsimile
jbjameson@jamesonlaw.net
**COUNSEL TO THE DEBTOR AND**
**THE DEBTOR-IN-POSSESSION**

I.      INTRODUCTION ..................................................................................................... 3
        A.      Filing of the Debtor's Chapter 11 Reorganization Case ................................ 3
        B.      Purpose of Disclosure Statement .................................................................. 3
        C.      Hearing on Confirmation of the Plan ............................................................ 4
        D.      Sources of Information .................................................................................. 5
II.     EXPLANATION OF CHAPTER 11 ....................................................................... 6
        A.      Overview of Chapter 11 ................................................................................ 6
        B.      Plan of Reorganization .................................................................................. 6
III.    VOTING PROCEDURES AND REQUIREMENTS FOR CONFIRMATION ...... 8
        A.      "Voting Claims" -- Parties Entitled to Vote ................................................ 8
        B.      Return of Ballots ........................................................................................... 9
        C.      Confirmation of Plan ..................................................................................... 9
IV.     BACKGROUND OF THE DEBTOR ..................................................................... 13
        A.      Background and Business of the Debtor ....................................................... 13
        B.      Prepetition Financing Transactions .............................................................. 13
        C.      Recent Sale Transactions .............................................................................. 14
        D.      Summary of Assets and Liabilities of the Debtor ........................................ 14
V.      IDENTITY OF MANAGEMENT FOR THE DEBTOR AND
        ORGANIZATIONAL STRUCTURE ..................................................................... 15
        A.      Organizational Structure and Management ................................................... 15
VI.     THE CHAPTER 11 CASE ...................................................................................... 16
        A.      Events Leading to the Chapter 11 Filings .................................................... 16
        B.      Procedural History ........................................................................................ 16
        C.      Preferences .................................................................................................... 17
        D.      Fraudulent Transfers ..................................................................................... 17
        E.      Post-Petition Operations ............................................................................... 18
VII.    DESCRIPTION OF THE PLAN ............................................................................. 18
        A.      Introduction ................................................................................................... 18
        B.      Designation of Claims and Interests ............................................................. 18
VIII.   TREATMENT OF UNCLASSIFIED CLAIMS ...................................................... 19
        A.      Administrative Claims ................................................................................... 19
IX.     CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND
        INTERESTS .................................................................................................... 19

X.      ACCEPTANCE OR REJECTION OF THE PLAN ...............................................25

    A.      Classes & Claims Entitled to Vote....................................................................25

    B.      Cramdown .........................................................................................................25

XI.     MANNER OF DISTRIBUTION OF PROPERTY UNDER THE PLAN...........................25

    A.      Plan Distributions..............................................................................................25

    B.      Disputed Payment or Distributions ...................................................................26

    C.      Minimum Distribution .......................................................................................26

    D.      Setoff.................................................................................................................26

    E.      Interest on Claims .............................................................................................26

    F.      Further Authorizations .......................................................................................26

    G.      Termination of the Estate ..................................................................................26

    H.      Directors and Officers .......................................................................................26

XII.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............27

    A.      Assumption of Executory Contracts and Leases ...............................................27

XIII.   CONDITIONS TO EFFECTIVENESS OF THE PLAN........................................................27

    A.      Conditions Precedent to Effectiveness..............................................................27

XIV.    EFFECTS OF PLAN CONFIRMATION...............................................................................27

    A.      Satisfaction, Release and Discharge of Claims.................................................27

    B.      Injunction ..........................................................................................................28

    C.      No Liability for Solicitation or Participation ....................................................28

    D.      Releases and Limitation of Liability of Exculpated Persons ...................................28

    E.      Term of Injunctions or Stays.............................................................................28

    F.      No Liability for Tax Claims ..............................................................................29

XV.     CONFIRMABILITY OF THE PLAN AND CRAMDOWN ...............................................29

XVI.    FEASIBILITY OF THE PLAN ..............................................................................................29

    A.      Feasibility..........................................................................................................29

    B.      Alternatives to Confirmation of the Plan ..........................................................29

XVII.   RISK FACTORS .....................................................................................................................30

XVIII.  CERTAIN FEDERAL INCOME TAX CONSEQUENCES...................................................31

    A.      Certain Material Federal Income Tax Consequences of the Plan............................31

XIX.    CONCLUSION........................................................................................................................31

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **I-10 BARKER CYPRESS, LTD.** | § | **CASE NO. 10-36582** |
| Debtor | § | **(Chapter 11)** |

FIRST AMENDED DISCLOSURE STATEMENT UNDER
11 U.S.C. § 1125 IN SUPPORT OF THE DEBTOR'S
PLAN OF REORGANIZATION,
DATED OCTOBER 29, 2010

SUMMARY OF THE PLAN[1]

The Plan of the Debtor, **I-10 Barker Cypress, Ltd**. ("Barker Cypress" or, the "Debtor") provides that the Debtor's Property (as defined below) will be sold and all creditors paid in full. The Debtor's Assets consist primarily of an 83,000 square foot shopping center on 17.2 acres of commercial land located in Houston, Texas (the "Property"). All Allowed Administrative Claims, all Allowed Priority Claims and all Allowed Unsecured Claims against the Debtor will be paid in full.

**THE DEBTOR URGES YOU TO VOTE IN FAVOR OF THE PLAN.**

**I.
INTRODUCTION**

**A.      Filing of the Debtor's Chapter 11 Reorganization Case**

The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on August 2, 2010 (the "Petition Date"), in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). Since the Petition Date, the Debtor has continued to operate its business and manage its property and assets as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

**B.      Purpose of Disclosure Statement**

This First Amended Disclosure Statement is submitted in accordance with Section 1125 of the Bankruptcy Code for the purpose of soliciting acceptances of the Plan from holders of certain Classes of Claims. The only Creditors whose acceptance of the Plan is sought are those whose Claims are "impaired" by the Plan, as that term is defined in Section 1124 of the Bankruptcy Code, and who are receiving distributions under the Plan. Holders of Claims that are not "impaired" are deemed to have accepted the Plan. Holders of Claims and Interests that are not receiving any property under the Plan are deemed to have rejected the Plan.

---

[1] Any term used in this First Amended Disclosure Statement that is not defined herein has the meaning ascribed to that term in the Plan.

The Debtor has prepared this First Amended Disclosure Statement pursuant to the provisions of Section 1125 of the Bankruptcy Code, which requires that a copy of the Plan, or a summary thereof, be submitted to all holders of Claims against, and Interests in, the Debtor, along with a written Disclosure Statement containing adequate information about the Debtor of a kind, and in sufficient detail, as far as is reasonably practicable, that would enable a hypothetical, reasonable investor typical of Creditors and holders of Interests to make an informed judgment in exercising their right to vote on the Plan.

**This First Amended Disclosure Statement was approved by the Bankruptcy Court on _____, 2010.** Such approval is required by the Bankruptcy Code and does not constitute a judgment by the Bankruptcy Court as to the desirability of the Plan, or as to the value or suitability of any consideration offered thereunder. Such approval does indicate, however, that the Bankruptcy Court has determined that the First Amended Disclosure Statement meets the requirements of Section 1125 of the Bankruptcy Code and contains adequate information to permit the holders of Allowed Claims, whose acceptance of the Plan is solicited, to make an informed judgment regarding acceptance or rejection of the Plan.

**THE APPROVAL BY THE BANKRUPTCY COURT OF THIS FIRST AMENDED DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN. MOST OF THE FINANCIAL INFORMATION WAS ACCUMULATED BY PEYTON COTTRELL, THE PRESIDENT OF THE DEBTOR AND PRESIDENT OF THE MANAGEMENT COMPANY FOR THE DEBTOR, FROM ITS BOOKS AND RECORDS. THE MATERIAL HEREIN CONTAINED IS INTENDED SOLELY FOR THE USE OF CREDITORS AND HOLDERS OF INTERESTS OF THE DEBTOR IN EVALUATING THE PLAN AND VOTING TO ACCEPT OR REJECT THE PLAN AND, ACCORDINGLY, MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE DETERMINATION OF HOW TO VOTE ON THE PLAN.**

**THE DEBTOR BELIEVES THAT ITS PLAN, AND THE TREATMENT OF CLAIMS THEREUNDER, IS IN THE BEST INTERESTS OF SUCH CREDITORS, AND THE DEBTOR URGES THAT YOU VOTE TO ACCEPT THE PLAN.**

C.     **Hearing on Confirmation of the Plan**

The United States Bankruptcy Court has set _____, 2010, at \_\_:00 \_.m., Central Time, in Courtroom 401, 4th Floor, 515 Rusk, Houston, Texas, 77002 as the date, time and place for the hearing (the "Confirmation Hearing") to determine whether the Plan has been accepted by the requisite number of Creditors and holders of Interests and whether the other requirements for Confirmation of the Plan have been satisfied. Once commenced, the Confirmation Hearing may be adjourned or continued by announcement in open court with no further notice. Holders of Claims against, or Interest in, the Debtor who are entitled to vote may vote on the Plan by completing and delivering the enclosed ballot to James B. Jameson, James B. Jameson & Associates, P.C., P. O. Box 980575, Houston, TX 77098, on or before 5:00 p.m.,

Central Time on _____, 2010.  If the Plan is rejected by one or more impaired Classes of Creditors or holders of Interests, that Plan, or a modification thereof, may still be confirmed by the Bankruptcy Court under Section 1129(b) of the Bankruptcy Code (commonly referred to as a "cramdown") if the Bankruptcy Court determines, among other things, that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting Class or Classes of Creditors or holders of Interests impaired by the Plan.  The procedures and requirements for voting on the Plan are described in more detail below.

D.      **Sources of Information**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECTED TO A CERTIFIED AUDIT AND IS BASED, IN PART, UPON INFORMATION PREPARED BY PARTIES OTHER THAN THE DEBTOR.  THEREFORE, ALTHOUGH THE DEBTOR HAS MADE EVERY REASONABLE EFFORT TO BE ACCURATE IN ALL MATERIAL MATTERS, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT ALL THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE.**

Except as otherwise expressly indicated, the portions of this First Amended Disclosure Statement describing the Debtor, its business, properties and management, and the Plan, have been prepared from information furnished by the Debtor.

Certain of the materials contained in this First Amended Disclosure Statement are taken directly from other readily accessible documents or are digests of other documents.  While the Debtor has made every effort to retain the meaning of such other documents or portions that have been summarized, the Debtor urges that any reliance on the contents of such other documents should depend on a thorough review of the documents themselves.  In the event of a discrepancy between this First Amended Disclosure Statement and the actual terms of a document, the actual terms of such document shall apply.

The authors of the First Amended Disclosure Statement have compiled information from the Debtor without professional comment, opinion or verification and do not suggest comprehensive treatment has been given to matters identified herein.  Each Creditor and holder of an Interest is urged to independently investigate any such matters prior to reliance.

The statements contained in this First Amended Disclosure Statement are made as of the date hereof unless another time is specified, and neither the delivery of this First Amended Disclosure Statement nor any exchange of rights made in connection with it shall, under any circumstances, create an implication that there has been no change in the facts set forth herein since the date hereof.

No statements concerning the Debtor, the value of its property, or the value of any benefit offered to the holder of a Claim or Interest in connection with the Plan should be relied upon other than as set forth in this First Amended Disclosure Statement.  In arriving at your decision, you should not rely on any representation or inducement made to secure your acceptance or rejection that is contrary to information contained in this First Amended Disclosure Statement, and any such additional representations or inducements should be reported to counsel for the

Debtor, James B. Jameson, James B. Jameson & Associates, P.C., P. O. Box 980575, Houston, TX 77098.

## II.
## EXPLANATION OF CHAPTER 11

### A.      Overview of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Pursuant to Chapter 11, a debtor-in-possession attempts to reorganize its business and financial affairs for the benefit of the debtor, its creditors, and other parties-in-interest, or a debtor-in-possession may liquidate its assets.

The commencement of a Chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor in property as of the date the petition is filed.  Unless the Bankruptcy Court orders the appointment of a trustee, Sections 1107 and 1108 of the Bankruptcy Code provide that a Chapter 11 debtor may continue to operate its business and control the assets of its estate as a "debtor-in-possession," as has the Debtor since the Petition Date.

The filing of a Chapter 11 petition also triggers the automatic stay, which is set forth in Section 362 of the Bankruptcy Code.  The automatic stay essentially halts all attempts to collect pre-petition claims from the debtor or to otherwise interfere with the debtor's business or its estate.

### B.      Plan of Reorganization

Formulation of a plan of reorganization is the principal purpose of a Chapter 11 case. The plan sets forth the means for satisfying the claims of creditors against and interests of equity security holders in the debtor.  Unless a trustee is appointed, only the debtor may file a plan during the first 120 days of a Chapter 11 case (the "Exclusive Period").  After the Exclusive Period has expired, a creditor or any other party-in-interest may file a plan, unless the debtor files a plan within the Exclusive Period.  If a debtor does file a plan within the Exclusive Period, the debtor is given sixty (60) additional days (the "Solicitation Period") to solicit acceptances of its plan.  Section 1121(d) of the Bankruptcy Code permits the Bankruptcy Court to extend or reduce the Exclusive Period and the Solicitation Period upon a showing of adequate "cause."

A plan of reorganization provides the manner in which a debtor will satisfy the claims of its creditors.  After the plan of reorganization has been filed, certain holders of claims against or interests in a debtor are permitted to vote on whether to accept or reject the plan.  Chapter 11 does not require that each holder of a claim against or interest in a debtor vote in favor of a plan of reorganization in order for the plan to be confirmed.  At a minimum, however, a plan of reorganization must be accepted by at least one (1) Class of claims impaired under the plan, such acceptance being made by the holders of a majority in number and two-thirds (2/3) in amount of the claims actually voting in such Class.  The Bankruptcy Code also defines acceptance of a plan of reorganization by a Class of interests (equity securities) as acceptance by holders of two-thirds (2/3) of the number of interests actually voted.

FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF THE
DEBTOR'S PLAN OF REORGANIZATION, DATED DECEMBER 9, 2010

-6-

Classes of Claims or Interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and, thus, are not entitled to vote. Acceptances of the Plan in this case are being solicited only from those persons who hold Claims or Interests in an impaired Class. A Class is "impaired" if the legal, equitable, or contractual rights attaching to the Claims or Interests of that Class are modified. Modification does not include curing defaults and reinstating maturity or payment in full in cash.

Even if all Classes of Claims and Interests accept a plan of reorganization, the Bankruptcy Court may nonetheless still deny confirmation. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation; among other things, the Bankruptcy Code requires that a plan of reorganization be in the "best interests" of creditors and shareholders and that the plan of reorganization be feasible. The "best interests" test generally requires that the value of the consideration to be distributed to claimants and interest holders under a plan may not be less than those parties would receive if that debtor were liquidated under a hypothetical liquidation occurring under Chapter 7 of the Bankruptcy Code. A plan of reorganization must also be determined to be "feasible," which generally requires a finding that there is a reasonable probability that the debtor will be able to perform the obligations incurred under the plan of reorganization, and that the debtor will be able to continue operations without the need for further financial reorganization.

The Bankruptcy Court may confirm a plan of reorganization even though fewer than all of the classes of impaired claims and interests accept it. In order for a plan of reorganization to be confirmed despite the rejection of a Class of impaired claims or interests, the proponent of the plan must show, among other things, that the plan of reorganization does not discriminate unfairly and that the plan is fair and equitable with respect to each impaired Class of claims or interests that has not accepted the plan of reorganization.

Under Section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a Class if, among other things, the plan provides: (a) that each holder of a claim included in the rejecting Class will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (b) that the holder of any claim or interest that is junior to the claims of such Class will not receive or retain on account of such junior claim or interest any property at all.

The Bankruptcy Court must further find that the economic terms of the plan of reorganization meet the specific requirements of Section 1129(b) of the Bankruptcy Code with respect to the particular objecting Class. The proponent of the plan of reorganization must also meet all applicable requirements of Section 1129(a) of the Bankruptcy Code (except Section 1129(a)(8) if the proponent proposes to seek confirmation of the plan under the provisions of Section 1129(b)). These requirements include the requirement that the plan comply with applicable provisions of the Bankruptcy Code and other applicable law, that the plan be proposed in good faith, and that at least one impaired Class of creditors has voted to accept the plan.

FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF THE
DEBTOR'S PLAN OF REORGANIZATION, DATED DECEMBER 9, 2010

-7-

## III.
## VOTING PROCEDURES AND REQUIREMENTS FOR CONFIRMATION

**A.**     **If you are in one of the Classes of Claims whose rights are affected by the Plan (see "Summary of the Plan" below), it is important that you vote.  If you fail to vote, your rights may be jeopardized. "Voting Claims" -- Parties Entitled to Vote**

Pursuant to the provisions of Section 1126 of the Bankruptcy Code, holders of Claims or Interests that are (i) <u>allowed</u>, (ii) <u>impaired</u>, and (iii) that are <u>receiving or retaining property on account of such Claims or Interests</u> pursuant to a plan, are entitled to vote either for or against that plan (hereinafter, "Voting Claims").  Accordingly, in this Bankruptcy Case, any holder of a Claim classified in Classes of the Plan may have a Voting Claim and should have received a ballot for voting (with return envelope) in these First Amended Disclosure Statement and Plan materials (hereinafter, the "Solicitation Package") since these are the Classes consisting of <u>impaired</u> Claims or Interests that are <u>receiving property</u>.

If a controversy arises as to whether any Class of Claims or Class of Equity Interest is impaired under the Plan, such Class shall be treated as specified in the Plan unless prior to Confirmation of the Plan the Bankruptcy Court determines such controversy differently upon motion of the party challenging the characterization of a particular Class of Claims or Class of Equity Interest under the Plan.

As referenced above, a Claim must be <u>allowed</u> to be a Voting Claim.  The Debtor filed schedules in this Bankruptcy Case listing Claims against the Debtor.  To the extent a creditor's Claim was listed in the Debtor's schedules, and was not listed as disputed, contingent, or unliquidated, it is deemed "allowed."  Any creditor whose Claim was not scheduled, or was listed as disputed, contingent or unliquidated, must have timely filed a proof of Claim in order to have an "allowed" Claim.  The last day for filing Proofs of Claim for amounts owed pre-petition is December 1, 2010.  Absent an objection to that Proof of Claim, it is deemed "allowed."  In the event that any Proof of Claim is subject to an objection by the Debtor, as of or during the Plan voting period (an "Objected-to Claim"), then, by definition, it is not "allowed," for purposes of Section 1126 of the Bankruptcy Code, and is not to be considered a Voting Claim entitled to cast a ballot.  Nevertheless, pursuant to Bankruptcy Rule 3018(a), the holder of an Objected-to Claim may petition the Bankruptcy Court, after notice and hearing, to allow the Claim temporarily for voting purposes in an amount which the Bankruptcy Court deems proper.  Any order of the Bankruptcy Court estimating a Claim for voting purposes must be entered on or prior to the deadline for voting on the Plan.  Allowance of a Claim for voting purposes, and disallowance for voting purposes, does not necessarily mean that all or a portion of the Claim will be allowed or disallowed for distribution purposes and allowance of a Claim for voting purposes shall not affect authorized objecting parties' rights to object to and prosecute such objection to all or a portion of such Claim.

**By Enclosing Ballots, The Debtor Is Not Representing That You Are Entitled To Vote On The Plan.**

**B.**     **If you believe you are a holder of a Claim in an impaired Class under the Plan and are entitled to vote to accept or reject the Plan, but did not receive a ballot with these materials, please contact James B. Jameson, James B. Jameson & Associates, P.C.; P.O. Box 980575, Houston, TX 77098. Return of Ballots**

If you are a holder of a Voting Claim with respect to the Plan, your vote is important. Completed ballots should be returned in the enclosed envelope to:

> James B. Jameson
> James B. Jameson & Associates, P.C.
> P. O. Box 980575
> Houston, TX 77098

**1.     Voting Record Date**

Pursuant to Bankruptcy Rule 3017(c), _____, 2010 is the "Voting Record Date" for determining which holders of Voting Claims may be entitled to vote to accept or reject the Plan.  Only holders of record of a Claim against the Debtor on that date are entitled to cast ballots.

**2.     Deadline for Submission of Ballots**

**BALLOTS MUST BE SUBMITTED TO COUNSEL FOR THE DEBTOR, AND MUST ACTUALLY BE RECEIVED, WHETHER BY MAIL OR EXPRESS DELIVERY, BY 5:00 P.M. HOUSTON CENTRAL TIME ON _____, 2010 (THE "BALLOT RETURN DATE").  ANY BALLOTS RECEIVED AFTER THAT TIME WILL NOT BE COUNTED.  ANY BALLOT THAT IS NOT EXECUTED BY A PERSON AUTHORIZED TO SIGN SUCH BALLOT WILL NOT BE COUNTED.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE PROCEDURES FOR VOTING ON THE PLAN, CONTACT JAMES B. JAMESON, JAMES B. JAMESON & ASSOCIATES, P.C., P.O. BOX 980575, HOUSTON, TEXAS 77098.**

**THE DEBTOR URGES ALL HOLDERS OF VOTING CLAIMS TO VOTE IN FAVOR OF THE PLAN.**

**C.     Confirmation of Plan**

**1.     Solicitation of Acceptances**

The Debtor is soliciting the vote of holders of Voting Claims for the Plan.  The cost of any solicitation by the Debtor will be borne by the Debtor.  No other additional compensation shall be received by any party for any solicitation other than as disclosed to the Bankruptcy Court.

NO REPRESENTATIONS OR ASSURANCES, IF ANY, CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS FIRST AMENDED DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR VOTE THAT ARE OTHER THAN HEREIN CONTAINED SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THIS IS A SOLICITATION SOLELY BY THE DEBTOR AND IS NOT A SOLICITATION BY ANY SHAREHOLDER, ATTORNEY, OR ACCOUNTANT FOR THE DEBTOR. THE REPRESENTATIONS, IF ANY, MADE HEREIN ARE THOSE OF THE DEBTOR AND NOT OF SUCH SHAREHOLDERS, ATTORNEYS, OR ACCOUNTANTS, EXCEPT AS MAY BE OTHERWISE SPECIFICALLY AND EXPRESSLY INDICATED.

Under the Bankruptcy Code, a vote for acceptance or rejection of a plan may not be solicited unless the claimant has received a copy of a disclosure statement approved by the Bankruptcy Court prior to, or concurrently with, such solicitation. This solicitation of votes on the Plan is governed by Section 1125(b) of the Bankruptcy Code. Violation of Section 1125(b) of the Bankruptcy Code may result in sanctions by the Bankruptcy Court, including disallowance of any improperly solicited vote.

## 2. Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan, in which event the Bankruptcy Court shall enter an order confirming the Plan. For a plan to be confirmed in a commercial case, Section 1129 requires that[2]:

(i)     The Plan complies with the applicable provisions of the Bankruptcy Code;

(ii)    The Debtor has complied with the applicable provisions of the Bankruptcy Code;

(iii)   The Plan has been proposed in good faith and not by any means forbidden by law;

(iv)    Any payment or distribution made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan for services or for costs and expense in connection with the Plan has been disclosed to the Bankruptcy Court, and any such payment or distribution made before

---

[2] The Debtor does not have any rates subject to government regulatory commission approval, and the Debtor has no retiree benefits plan.

the confirmation of the Plan has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, or if such payment or distribution is to be fixed after confirmation of the Plan, such payment or distribution is subject to the approval of the Bankruptcy Court as reasonable;

(v)     The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the Plan; the appointment to, or continuance in, such office of such individual is consistent with the interests of Creditors and holders of Interests and with public policy; and the Debtor has disclosed the identity of any insider that will be employed or retained by the Debtor after Confirmation and the nature of any compensation for such insider;

(vi)    With respect to each impaired Class of Claims or Interests, either each holder of a Claim or Interest of the Class has accepted the Plan or will receive or retain under the Plan on account of that Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code.  If Section 1111(b)(2) of the Bankruptcy Code applies to the Claims of an impaired Class, each holder of a Claim of that Class will receive or retain under the Plan on account of that Claim property of a value, as of the Effective Date, that is not less than the value of that holder's interest in the Debtor's interest in the property that secures that Claim;

(vii)   Each Class of Claims or Interests has either accepted the Plan or is not impaired under the Plan;

(viii)  Except to the extent that the holder of a particular Administrative Claim or Priority Claim has agreed to a different treatment of its Claim, the Plan provides that Administrative Claims and non-Tax Priority Claims shall be paid in full on the Effective Date or the date on which it is Allowed.  Pre-Petition Priority Tax Claims must be paid in full over a not more than six year period from date of assessment;

(ix)    If a Class of Claims or Interests is impaired under the Plan, at least one Class of Claims or Interests that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim or Interest of that Class; and

(x)     Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

(xi)    All fees of the U.S. Trustee have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

The Debtor believes that the Plan satisfies all of the statutory requirements of the Bankruptcy Code and that the Plan is proposed in good faith.  The Debtor believes it has complied or will have complied with all the requirements of the Bankruptcy Code with respect to the Plan.

### 3.    Acceptances Necessary to Confirm the Plan

Voting on the Plan by each holder of a Claim or Interest of the Debtor is important. Chapter 11 of the Bankruptcy Code does not require that each holder of a Claim or Interest vote in favor of the Plan in order for the Court to confirm the Plan.  Generally, to be confirmed under the acceptance provisions of Section 1126(a) of the Bankruptcy Code, the Plan must be accepted by each Class of Claims that is impaired under the Plan by Class members holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class actually voting in connection with the Plan; in connection with a Class of Interests, more than two-thirds (2/3) of the Interests actually voted must accept to bind that Class.  Even if all Classes of Claims and Interests accept a Plan, the Bankruptcy Court may refuse to confirm the Plan.

### 4.    Cramdown

In the event that any impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."  A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no Class receives more than it is legally entitled to receive for its claims or equity interests.  "Fair and equitable" has different meanings for holders of secured and unsecured claims and equity interests.

With respect to a secured claim, "fair and equitable" means either (i) the impaired secured creditor retains its liens to the extent of its allowed claim and receives deferred cash payments at least equal to the allowed amount of its claims with a present value as of the Effective Date of the Plan at least equal to the value of such creditor's interest in the property securing its liens, (ii) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (i) or (iii) hereof, or (iii) the impaired secured creditor realizes the "indubitable equivalent" of its claim under the Plan.

With respect to an unsecured claim, "fair and equitable" means either (i) each impaired creditor receives or retains property of a value equal to the amount of its allowed claim; or (ii) the holder of any claim or equity interest that is junior to the claims of the dissenting Class will not receive any property under the Plan.

With respect to equity interests, "fair and equitable" means either (i) each impaired equity interest receives or retains, on account of that equity interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the holder is entitled,

any fixed redemption price to which the holder is entitled, or the value of the equity interest; or (ii) the holder of any equity interest that is junior to the equity interest of that Class will not receive or retain under the Plan, on account of that junior equity interest, any property.

In the event one or more Classes of impaired Claims or Interests rejects or is deemed to have rejected the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired Class of Claims or Interests.

The Debtor believes that the Plan does not discriminate unfairly and are fair and equitable with respect to each Class of Claims and Interests that is impaired.

## IV.
## BACKGROUND OF THE DEBTOR

### A.    Background and Business of the Debtor

The primary business activity of the Debtor is the ownership, leasing, operation and management of the Property, through a third-party management company.  The Debtor acquired the vacant real property on or about April 2005.  Construction of multiple free-standing commercial buildings was commenced.  Construction of the building shell in which Bally Total Fitness is situated was completed on or about March 2007; Building A (17748 Katy Freeway) was completed on or about January 2008; Building F (17758 Katy Freeway) was completed on or about March 2008; Building G (17756 Katy Freeway) was completed on or about July 2008; Building E (17754 Katy Freeway) was completed on or about December 2008; and Building H/pad (17754-B Katy Freeway) was completed in January 2009..

Due to higher than expected tenant build-out costs, the Debtor was unable to pay the 2009 ad valorem taxes on the Property in a timely fashion.  In addition, the indebtedness due and owing to Compass Bank ("Compass") became due in March 2010.  The Debtor's negotiations with Compass did not result in a comprehensive, long term agreement.

Compass posted the Property for a non-judicial foreclosure sale scheduled for August, 2010.  In order to preserve the equity positions and ensure the continued stability of the Debtor's operations, the Debtor elected to file a voluntary petition under Chapter 11.

### B.    Prepetition Financing Transactions

Prior to the bankruptcy filing, the Debtor acquired an initial construction loan through Regions Bank on or about June 2005, to begin development of the Property.  Such funds were used for the completion of necessary infrastructure work (e.g., utilities, etc...).  Subsequently, the Debtor acquired a loan through Texas State Bank for the Sixty Thousand (60,000) square foot parcel (where Bally Total Fitness is situated).  On or about February 2007, the Regions Bank loan was transferred to Texas State Bank.  In August 2008, Texas State Bank was acquired by Compass.  Accordingly, Compass is the only major secured lender of the Debtor.  The amount owed on the Compass loan was in excess of Seventeen Million Dollars (>$17,000,000).

### C.       Recent Sale Transactions

Prior to the filing of the Disclosure Statement and Plan of Reorganization, the Debtor negotiated a sale of one of the buildings ("Building A") on the Property to Chimney Joint Venture ("Chimney").  The *Debtor's Motion to Sell Certain Real Property, Free & Clear of All Liens, Claims & Encumbrances, and Other Interests Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m)* (the "Sale Motion") is currently pending before this Court. The Sale Motion contemplates a sale of Building A, the net proceeds of which would satisfy the taxes against the Property and a portion of the Allowed Secured Claim of Compass.

### D.       Summary of the Assets and Liabilities of the Debtor

A complete description of the assets and liabilities of the Debtor is specifically set forth in the Schedules and Statement of Financial Affairs which were filed with the Bankruptcy Court. The summary description below should not be relied upon as a substitute for or an amendment of the filings with the Bankruptcy Court.  Each creditor and party in interest should refer to the documents on file with the Bankruptcy Court for a complete description of the Debtor's assets and liabilities.

## Assets

### *Cash and Cash-Equivalent Assets*

As of the Petition Date, the Debtor held the following: (i) cash in the form of Cash or deposit accounts in the amount of approximately Sixty-Six Thousand One Hundred Twenty-Six and 29/100 Dollars ($66,126.29); and (ii) a security deposit in the amount of Two Thousand and No/100 Dollars ($2,000.00).

### *Real Property*

As of the Petition Date, the Debtor owned an 83,000 square foot shopping center on 17.2 acres of commercial land located in Houston, Texas (the "Property") with an estimated value (which may not represent the actual market value) of Twenty-Four Million and No/100 Dollars (~$24,000,000.00).  A true and correct map of the Property is attached hereto as Exhibit "A."

### *Other Assets*

As of the Petition Date, the Debtor had potential assets in the form of pending litigation claims against various defendants, totaling approximately Nine Hundred Fifty-Two Thousand and No/100 Dollars (~$952,000.00).

## Liabilities

### *Administrative and Priority Claims*

As of the Petition Date, various taxing authorities held Priority Claims against the Debtor as follows: (i) Katy Independent School District in the amount of Two Hundred Sixty-Eight Thousand Seven Hundred Forty-Eight and 53/100 Dollars ($268,748.53); and (ii) Harris County

FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF THE DEBTOR'S PLAN OF REORGANIZATION, DATED DECEMBER 9, 2010

-14-

Tax Assessor in the amount of Two Hundred Twenty-Four Thousand Four Hundred Seventeen and 15/100 Dollars ($224,417.15).  There are no other Priority Claims against the Debtor other than claims for Professional Fees.

At this time, the Debtor expects that all Executory Contracts or Leases set forth on the Debtor's schedules will be assumed.

*Secured Claims*

As of the Petition Date, Compass held a Secured Claim against the Debtor in the approximate amount of Seventeen Million Two Hundred Sixty-One Thousand Five Hundred Nine and No/100 Dollars (~$17,261,509.00).  As described above, the Compass Loan was funded and secured by the Debtors' Property.

*Unsecured Claims*

As of the Petition Date, the Debtor had unsecured creditors holding Unsecured Claims totaling approximately Two Hundred Thousand and No/100 Dollars (~$200,000.00).  The Debtor expressly reserves the right to object to all or part of the Unsecured Creditors' claims.

**V.**

**IDENTITY OF MANAGEMENT FOR THE DEBTOR
AND ORGANIZATIONAL STRUCTURE**

**A.      Organizational Structure and Management**

The Debtor is a Texas limited partnership established in 2006.  The general partner of the Debtor is Development Enterprises, Inc.; and the limited partners are organized into two separate classes: Class A and Class B, as described below:

| Name | Interest Before Payout | Interest After Payout |
|------|------------------------|-----------------------|
| **General Partner:** | | |
| Development Enterprises, Inc. | 1.0% | 1.0% |
| **Limited Partners:** | | |
| **Class A Limited Partner:** | | |
| RCP Cypress Park, Ltd. | 98.0% | 53.0% |
| **Class B Limited Partners:** | | |
| Corsair Investments, Inc. | 0.5% | 22.0% |
| Oakleigh Investments, Ltd. | 0.1% | 5.0% |

FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF THE
DEBTOR'S PLAN OF REORGANIZATION, DATED DECEMBER 9, 2010

-15-

| | | |
|---|---|---|
| Peyton Cottrell Acquisitions, Inc. | 0.3% | 12.0% |
| Lyceum Investments, Inc. | 0.1% | 5.0% |
| Flintwood Investments, LP | 0.0% | 2.0% |

The day to day operations of the Debtor are managed by Peyton Cottrell Interests, Inc. ("PCI"), which charges a monthly management fee of five percent (5%) of the monthly lease revenue to the Debtor. PCI will continue, after confirmation of the Plan, to manage the Property.

Peyton Cottrell serves as the President and sole shareholder of PCI. He receives no compensation from the Debtor other than in his capacity as President of the management company, PCI. Mr. Cottrell also serves as the President of the General Partner for the Debtor, Development Enterprises, Inc.

Mr. Cottrell, as President of the General Partner for the Debtor, is responsible for the management decisions regarding the Debtor's business activities. Mr. Cottrell has extensive experience in the real estate development and management of commercial properties. He has been involved in all phases of development, including site acquisition, financing of projects, leasing, construction and final sale. During his career in the shopping center industry, Mr. Cottrell has leased more than three million square feet of retail space.

## VI.
## THE CHAPTER 11 CASE

### A.    Events Leading to the Chapter 11 Filing

In March, 2010, the note for the indebtedness due and owing to Compass matured. The Debtor was unable to obtain acceptable financing and was delinquent in the payment of the ad valorem taxes to the respective taxing authorities for the Property.

As a result of these defaults, Compass notified the tenants of the Property to begin remitting the rental payments directly to Compass. In addition, the Property was posted for a non-judicial foreclosure sale in August, 2010.

### B.    Procedural History

1.    On or about August 2, 2010, the Debtor filed a Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code. All Schedules were filed on August 2, 2010. The Statement of Financial Affairs was filed on August 17, 2010.

2.    On or about August 6, 2010, the Debtor filed its *Application for Interim and Final Approval of Employment of James B. Jameson as Attorney for the Debtor*. On or about September 7, 2010, the Court entered an order granting the application.

3.    On or about August 6, 2010, the Debtor filed its *Emergency Motion for Interim Order Authorizing Use of Cash Collateral and Providing Adequate Protection* requesting the use

of Cash Collateral.   On or about August 16, 2010, the Court entered the *Agreed Order Authorizing the Limited Use of Cash Collateral and Providing Adequate Protection*.

     4.     On or about October 8, 2010, the Debtor filed its *Application to Employ Womac & Associates as Special Litigation Counsel*, which is currently pending before this Court.

     5.     On or about October 8, 2010, the Debtor filed its *Application to Employ Joseph A. McDermott, III as Special Litigation Counsel,* which is currently pending before this Court.

     6.     On or about October 19, 2010, the Debtor filed its *Motion to Sell Certain Real Property, Free & Clear of All Liens, Claims & Encumbrances, and Other Interests Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m),* which is currently pending before this Court.  A hearing on the Motion to Sell is scheduled for November 16, 2010.

     7.     Monthly Operating Reports have been filed for the months of August and September, 2010.

## C.     Preferences

Under federal bankruptcy law, a debtor-in-possession may avoid pre-petition transfers of assets of a debtor as "preferential transfers." To constitute a preferential transfer, the transfer must be (1) of the debtor's property; (2) to or for antecedent debt; (3) made while the debtor was insolvent; (4) made within ninety (90) days before the filing of a bankruptcy petition or made within one year if to an "insider"; and (5) a transfer that enables the creditor to receive more than it would receive under Chapter 7 liquidation of the debtor's assets. For this purpose, the Bankruptcy Code creates a rebuttable presumption that the debtor was insolvent during the ninety (90) days immediately before the filing of the bankruptcy petition.  At this time, the Debtor has not completed a formal analysis to determine what, if any, preferential transfers were made prior to the filing of the Bankruptcy Case.  The right to avoid and recover is specifically reserved under the Plan and the Debtor may seek to avoid and recover preferential transfers as, and to the extent, it deems appropriate.  Some or all of these payments may be avoided and recovered as preferential transfers.

## D.     Fraudulent Transfers

Fraudulent transfer law generally is designed to avoid two types of transactions: (i) conveyances that constitute "actual fraud" upon creditors, and (ii) conveyances that constitute "constructive fraud" upon creditors. In the bankruptcy context, fraudulent transfer liability arises under Section 548 and 544 of the Bankruptcy Code. Section 548 permits the debtor-in-possession to "reach back" for a period of two years to avoid fraudulent transfers made by the Debtor or fraudulent obligations incurred by the Debtor, and Section 544 permits the debtor-in-possession to apply applicable state fraudulent transfer law to any such action. Assuming that Texas state law were to apply, the debtor-in-possession could challenge conveyances, transfers or obligations made or incurred by the Debtor within the past four (4) years if similar requirements are met. The Debtor is still investigating whether there are any transfers which constitute fraudulent transfers. The Debtor's right to seek to avoid and recover any fraudulent transfer is specifically preserved under the Plan and the Debtor may seek to avoid and recover any fraudulent transfer which may exist as, and to the extent, it deems appropriate.

**FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF THE DEBTOR'S PLAN OF REORGANIZATION, DATED DECEMBER 9, 2010**

-17-

### E.    Post-Petition Operations

Copies of the Debtor's Monthly Operating Reports reflecting the results of the Debtor's operations for each month the Debtor has been in bankruptcy are on file with the Clerk of the Bankruptcy Court.

## VII.
## DESCRIPTION OF THE PLAN

### A.    Introduction

The proposed Plan provides for a sale of the entire Property.  The Debtor proposes to make interest-only payments on the Compass note, allowing the Debtor time to market and sell the remaining buildings on the Property, thereby providing an income stream for the payment of the Compass note, the Allowed Priority and Unsecured Claims in full.  A copy of the Plan is attached hereto as Exhibit "B."

### B.    Designation of Claims and Interests

The following is a designation of the Classes of Claims and Interests under the Plan.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims described in Article 3 of the Plan have not been classified and are excluded from the following Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Class or Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied before the Effective Date; a Claim or Interest which is not an Allowed Claim or Interest is not in any Class.  Notwithstanding anything to the contrary contained in the Plan, no distribution shall be made on account of any Claim or Interest which is not an Allowed Claim or Allowed Interest.

| Class | Description | Status |
|---|---|---|
| Class 1 | Priority Claims and Pre-Petition Ad Valorem Tax Claims | Unimpaired – Not Voting |
| Class 2 | Secured Claim of Compass Bank | Impaired – Voting |
| Class 3 | Unsecured Claims (Trade Debt Equal to or Less than $1,000) | Impaired – Voting |
| Class 4 | Unsecured Claims (Exceeding $1,000) | Impaired – Voting |
| Class 5 | Pending State Court Litigation Claims | Disputed/Unimpaired  – Not Voting |

FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF THE
DEBTOR'S PLAN OF REORGANIZATION, DATED DECEMBER 9, 2010

-18-

| Class 6 | Equity Interests | Impaired-Deemed Accepting |

# VIII.
## TREATMENT OF UNCLASSIFIED CLAIMS

**A.     Administrative Claims**

**1.     General**

Each holder of an Allowed Administrative Expense Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Administrative Expense Claim, in Cash, on or as soon as practicable after the later of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and by the Debtor.

**2.     Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. §1930 shall be paid in Cash equal to the amount of such Administrative Claim when due.

**3.     Bar Date for Administrative Claims**

All requests for payment or any other means of preserving and obtaining payment of Administrative Expense Claims, other than Ordinary Course Administrative Claims, that have not been paid, released or otherwise settled, including all requests for payment of Professional Fees, must be filed with the Bankruptcy Court and served upon the Debtor no later than the Administrative Expense Claims Bar Date. The Administrative Expense Claims Bar Date shall be thirty (30) days after the Effective Date.  Any request for payment of Administrative Expense Claims that is not filed by the Administrative Expense Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Estate, the Debtor, or any respective Affiliates or Representatives; provided, however, that Ordinary Course Administrative Claims shall be paid in the ordinary course of the Debtor's business and, if applicable, pursuant to the terms agreed upon by the Debtor and such Creditors.

# IX.
## CLASSIFICATION AND TREATMENT OF
## CLASSIFIED CLAIMS AND INTERESTS

**1.     Class 1 – Allowed Priority Claims and Pre-Petition Ad Valorem Tax Claims**

**a.     _Classification:_**  Class 1 of the Plan consists of Allowed Priority Claims against the Debtor.

**b.     _Treatment:_**  Class 1 of the Plan is unimpaired and the holders of Allowed Claims in Class 1 of the Plan will not vote on the Plan.  To the extent not paid prior to the Effective Date of the Plan, each holder of an Allowed Priority Claim shall receive in full

satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Priority Claim, in Cash, on or as soon as practicable after the latest of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; (iii) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor; or (iv) such date that is established by Texas statute as the date Ad Valorem Taxes are due and owing.

**2.      Class 2 – Secured Claim of Compass Bank ("Compass")**

  **a.      *Classification*:**  Class 2 of the Plan consists of the Allowed Secured Claim of Compass in the approximate amount of Seventeen Million Two Hundred Sixty-One Thousand Five Hundred Nine and No/100 Dollars (~$17,261,509.00).  The collateral securing the Allowed Secured Claim of Compass consists of a certain 83,000 square foot shopping center on 17.2 acres of commercial land located in Houston, Texas (the "Property") belonging to the Debtor.  The Property consists of six (6) free-standing commercial buildings which are described in Exhibit "A" attached hereto.  At present, the Property is eighty percent (80%) leased and has an appraised fair market value of approximately Twenty-Four Million Dollars ($24,000,000.00).  The Debtor contends that Compass is fully secured by its collateral pursuant to 11 U.S.C. §506.

  **b.      *Treatment*:**

   1.      Prior to confirmation of the Plan, the Debtor filed a *Motion to Sell Certain Real Property, Free & Clear of All Liens, Claims & Encumbrances, and Other Interests Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m)* (the "Sale Motion") requesting authorization to sell one (1) (of the six (6)) free-standing buildings, referred to as "Building A," consisting of +26,969 square feet.  The Bankruptcy Court has set a hearing for November 16, 2010 to approve the sale of Building A.  It is anticipated that the closing of the sale of Building A shall occur prior to confirmation of the Debtor's Plan.

   2.      The proposed sales price for Building A is Nine Hundred Fifty Thousand and No/100 Dollars ($950,000.00), payable in cash, at closing.  The proceeds from Building A shall be used to satisfy the ad valorem taxes against Building A, as well as the entire Property, as set forth in Class 1 hereinabove.  After payment of reasonable and necessary Closing Costs and the ad valorem taxes against the Property, the balance of the sales proceeds shall be applied to partially reduce the principal balance of the Class 2, Allowed Secured Claim of Compass.

   3.      To the extent not previously paid from the proposed sale of Building A, and, prior to the conclusion of the Marketing Period (as defined below),  Compass shall receive in full satisfaction, release and discharge of, and in exchange for such Allowed Secured Claim (including such interest, fees and charges as are Allowed under §506 of the Bankruptcy Code), at the election of the Debtor, either (i) the proceeds of the sale(s) of the remaining Property to the extent of such Allowed Secured Claim (after payment of superior liens and Closing Costs, if any, or (ii) transfer of a portion of the Property, without representation or warranty, in full or partial satisfaction of such Allowed Secured Claim.  The

FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF THE
DEBTOR'S PLAN OF REORGANIZATION, DATED DECEMBER 9, 2010

-20-

Debtor contends that the Allowed Secured Claim of Compass shall be satisfied in full from the sale(s) or conveyance(s) of the Property.

4.      Payment shall be made on or as soon as practicable after the Closing Date of any such Sale; or such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date.

5.      Upon the Effective Date of the Plan, the Debtor shall continue its efforts to lease, sell and market the remainder of the Property to achieve the highest possible price for the Estate.  As part of the sale and marketing plan, the Debtor has engaged Don Stringham, of Keller Williams Commercial, as the exclusive "Listing Agent" for the Property.[3]

6.      The Debtor anticipates that it will require a twenty-four (24) month period to lease the remaining vacant lease space and obtain a purchaser for the entire Property.  Accordingly, during the twenty-four (24) month period from the Effective Date (the "Marketing Period"), Compass shall continue to receive the amount of Seventy Thousand and No/100 Dollars ($70,000.00) per month from the existing cash flow from the Debtor's operations.  In addition, the Debtor shall escrow sufficient funds for the payment of ad valorem taxes.  During the Marketing Period, Compass Bank shall take no action to foreclose its liens against the Property.

7.      The Class 2 Claim is impaired.

**3.      Class 3 – Unsecured Claims (Trade Debt Equal to or Less than $1,000)**

**a.**      *Classification:*  Class 3 of the Plan consists of holders of Allowed Unsecured Claims consisting of Trade Debt equal to or less than One Thousand and No/100 Dollars ($1,000.00).

**b.**      *Treatment:*  In full satisfaction, release and discharge of, and in exchange for, all of their respective Allowed Unsecured Claims, each holder of an Allowed Unsecured Claim in Class 3, consisting of Trade Debt equal to or less than One Thousand and No/100 Dollars ($1,000.00), shall receive payment on or before thirty (30) days after the Effective Date in an amount equal to one hundred percent (100%) of the Allowed Claim of each Unsecured Claimant in Class 3.  Class 3 is Impaired.

**4.      Class 4 – Unsecured Claims (Exceeding $1,000)**

**a.**      *Classification:*  Class 4 of the Plan consists of holders of Allowed Unsecured Claims exceeding One Thousand and No/100 Dollars ($1,000.00).

---

[3] On or about October 29, 2010, the Debtor filed its *Application to Employ Don Stringham, Agent of Keller Williams Commercial, as Real Estate Agent and Request for Authorization to Pay Commission at Closing* seeking this Court's approval to engage Don Stringham as listing agent for the Property.

**b.**     ***Treatment***:  In full satisfaction, release and discharge of, and in exchange for, all of their respective Allowed Unsecured Claims, each holder of an Allowed Unsecured Claim in Class 4, consisting of Unsecured Claims exceeding One Thousand and No/100 Dollars ($1,000.00), shall receive payment in full, but in two (2) installments.  The first (1st) installment shall be made thirty (30) days after the Effective Date in an amount equal to fifty percent (50%) the Allowed Claim of each Unsecured Claimant in Class 4.  The balance of the Claim shall be paid one hundred eighty (180) days after the Effective Date of the Plan.

1.   Alternatively, if a holder of an Allowed Class 4 Claim elects to reduce its claim to seventy-five percent (75%) of its Allowed Claim, it shall be paid ten (10) days after the Effective Date.

2.   Class 4 is Impaired.

**5.**     **Class 5 – Pending State Court Litigation Claims**

**a.**     ***Classification:***  On the Petition Date, the Debtor was a party (in some instances a Plaintiff or Counter-Defendant) to several litigation matters, pending in various state courts (the "Litigation Claims").   The pending Litigation Claims in Class 5 are as follows:

**b.**     ***Treatment:***

*i. Cause No. 2008-20882; Advantage Electric, Inc. v. Bally Total Fitness Corp., RH Construction, Inc., and I-10 Barker Cypress, Ltd., f/k/a Bally West, Ltd.; and RH Construction, Inc. v. Bally Total Fitness Corp; In the 281st Judicial District Court of Harris County, Texas* (the "Advantage Litigation").

The Plaintiffs in the Advantage Litigation are seeking affirmative relief from Defendants for damages of approximately One Hundred Five Thousand Dollars (~$105,000.00) and the imposition and foreclosure of a lien on Debtor's property.  Bally Total Fitness Corp. ("Bally") has acknowledged, in writing, its duty to indemnify the Debtor in the case, but has not yet reimbursed the Debtor for any fees and expenses incurred in defending the Advantage Litigation.  The Debtor reserves the right to prosecute the indemnity claims against Bally and seek all affirmative remedies against the other Defendants.

*ii. Cause No. 2009-79393; I-10 Barker Cypress, Ltd. v. Brian Craft; and Brian Craft v. I-10 Barker Cypress, Ltd; In the 234th Judicial District Court of Harris County, Texas* (the "Craft Litigation").

In the Craft Litigation, the Debtor filed suit against Defendant, Brian Craft ("Craft"), in order to recover damages for breach of a lease of certain space in the Debtor's Property.  Craft then filed a counter-claim for misrepresentation.  A trial is currently set in the Craft Litigation for January, 2011.

*iii. Cause No. 2010-27497; I-10 Barker Cypress, Ltd. v. Patrick A. Onyenaucheya; and Patrick A. Onyenaucheya, Pro Se v. I-10 Barker Cypress, Ltd.; In the 151st Judicial District Court of Harris County, Texas* (the "PAO Litigation").

The PAO Litigation arose following the wrongful filing of a mechanic's lien affidavit by the Defendant, Patrick A. Onyenaucheya ("PAO"). The Debtor filed suit in order to remove the lien and the Defendant, PAO, filed a counterclaim for misrepresentation. Prior to the Petition Date, the Debtor filed its *Motion for Summary Judgment* in the PAO Litigation and, on August 27, 201, the 151st Court granted a final summary judgment to the Debtor. The Defendant, PAO, has since appealed that final summary judgment and the Debtor will need proposed special counsel to defend and prosecute all affirmative claims in the appeal. The summary judgment entered by the 151st Court also included attorney's fees incurred by the Debtor and a conditional award for successful defense of any appeal. Notwithstanding, the Debtor believes that the collectability of such fees is uncertain

*iv. Cause No. 2009-77736; I-10 Barker Cypress, Ltd. v. Hawkeye Interests, LLC, Carol Fensterman and Brent Mollenhauer; In the 152nd District Court of Harris County, Texas* (the "Hawkeye Litigation").

A. <u>Breach of Lease and Anticipatory Breach of Lease Against Defendant, Hawkeye Interests, L.L.C.:</u>

On August 17, 2006, the Debtor, as Lessor, and Defendant, Hawkeye Interests, L.L.C. ("Hawkeye"), as Lessee, entered into a lease agreement (the "Lease"), for the rental of approximately 2,400 square feet of lease space located on the Property ("Leased Premises"). Thereafter, on December 2, 2008, the Debtor, as Lessor, and Defendant, Hawkeye, as Lessee, entered into a first amendment to lease agreement whereby the lease agreement was amended to reduce base rent. The term of the lease agreement commenced on May 1, 2008 and expires April 30, 2018.

Pursuant to the terms of the Lease, Hawkeye entered into possession of the Leased Premises, but subsequently failed to pay monthly rentals owed pursuant to the Lease and abandoned the Leased Premises. As a result, Hawkeye owes the Debtor the amount of One Hundred Twenty-One Thousand Six Hundred Sixty-Three and 10/100 Dollars ($121,663.10) for accrued rentals and repairs to the Leased Premises through May 31, 2010, taking into consideration all lawful offsets and credits.

In an effort to mitigate the Debtor's damages, the Debtor has re-let the Leased Premises to a new tenant for the remainder of the Lease term for less monthly rentals, commencing June 1, 2010. The difference in the amount of monthly rentals owed by Hawkeye under the terms of the Lease, and the amount of rentals to be received from the new tenant for the remaining term of the Lease, equals Two Hundred Thirty-One

FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF THE
DEBTOR'S PLAN OF REORGANIZATION, DATED DECEMBER 9, 2010

-23-

Thousand One Hundred Twenty-Nine and 97/100 Dollars ($231,129.97), taking into consideration a present value factor of six percent (6%) and all lawful offsets and credits.

Additionally, pursuant to the terms of the Lease, Hawkeye owes the Debtor Twenty-Seven Thousand Four Hundred Forty and No/100 Dollars ($27,440.00) for commissions related to the re-letting of the Leased Premises to the new tenant.   As a result, Hawkeye owes the Debtor Two Hundred Fifty-Eight Thousand Five Hundred Sixty-Nine and 97/100 Dollars ($258,569.97) for anticipatory breach of the Lease, plus the accrued rent owed above in the amount of One Hundred Twenty-One Thousand Six Hundred Sixty-Three and 10/100 Dollars ($121,663.10) for a total amount of breach of Lease damages of Three Hundred Eighty Thousand Two Hundred Thirty-Three and 07/100 Dollars ($380,233.07).

B. _Breach of Guaranty to the Lease Against, Defendant, Carol S. Fensterman_:

Carol S. Fensterman ("Fensterman") executed and delivered a Lease Guaranty Agreement to Debtor whereby she unconditionally guaranteed certain obligations of the Lease and was required to make payment of all amounts due and owing under the terms of the Guaranty and Lease. However, Defendant, Fensterman, has failed and refused and continues to fail and refuse to make payment pursuant to the terms of the Guaranty and/or Lease and as a result owes the Debtor damages in the amount of One Hundred Fifty-Eight Thousand Three Hundred Six and 40/100 Dollars ($158,306.40).

C. _Conversion and Exemplary Damages Against Defendant, Brent Mollenhauer_:

Defendant, Brent Mollenhauer ("Mollenhauer"), wrongfully removed furniture, fixture, and equipment ("FF&E") from the Leased Premises and damaged the Leased Premises, in direct violation of the Lease.   The measure of damages for Defendant, Mollenhauer's wrongful retention of the FF&E and damages to the Leased Premises is the value of the FF&E when converted and repairs to the Leased Premises.   At this time, the amount of the replacement value of the FF&E and repairs to the Leased Premises is believed to be Fifty-Six Thousand Two Hundred Seventy and No/100 Dollars ($56,270.00).

v. The Pending State Court Litigation Claims have been stayed pursuant to 11 U.S.C. §362, and no request to lift the automatic stay has been filed.   Until such time as the Allowed Claims in Class 5 are adjudicated (either through the pending state court litigation or the claims objection process before the Bankruptcy Court,) the holders of such claims shall receive no distributions under the Plan.   The Debtor reserves all rights of setoff in connection with any and all Class 5 claims.

FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF THE
DEBTOR'S PLAN OF REORGANIZATION, DATED DECEMBER 9, 2010

-24-

vi. Class 5 is Unimpaired and shall receive no distributions under the Plan.  In the event that it is determined that a holder of a Class 5 Claim has an Allowed Claim, (after all setoffs and credits to the Debtor) such Allowed Claim shall be paid in accordance with the treatment of Class 4 creditors..

6.      **Class 6 – Equity Interests**

a.      *Classification*: Class 6 of the Plan consists of Equity Interests.

b.       *Treatment*: On the Effective Date, all Equity Interests shall be cancelled and extinguished.  New shares of stock shall be issued to the holders of Equity Interests.  However, until all superior classes of claims are satisfied, holders of Class 6 Equity Interests shall not receive or retain distributions or dividends on account of their Equity Interests.  Class 6 is Impaired and is deemed to have accepted the Plan.

# X.
## ACCEPTANCE OR REJECTION OF THE PLAN

A.      Classes and Claims Entitled to Vote.  Each holder of an Impaired Claim (other than a Claim or Interest that will receive no recovery under this Plan) shall be entitled to vote to accept or reject this Plan.  Classes of Claims not impaired under this Plan shall not be entitled to vote to accept or reject this Plan and shall be presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Classes 1 and 5 are not impaired and hence are presumed to have accepted this Plan.  Class 2 is a secured claim to the extent of the value of the collateral and is impaired and therefore is entitled to vote to accept or reject this Plan.  Classes 3 and 4 are impaired and therefore are entitled to vote to accept or reject this Plan.  Class 6, which comprises the holders of Equity Interests, will receive no recovery (unless and until all superior classes of claims are satisfied), is impaired; however, each holder of Equity Interests is deemed to have voted to accept this Plan.

B.      Cramdown.  If all applicable requirements for confirmation of this Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8), the Debtor shall request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, so long as at least one impaired Class of Claims has accepted this Plan, on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting impaired Class.

# XI.
## MANNER OF DISTRIBUTION OF PROPERTY UNDER THE PLAN

A.      Plan Distributions.  The Plan contemplates a sale of the Property the sales proceeds of which should be sufficient to satisfy all administrative claims and the Allowed Claims in Classes 1 through 3.  To the extent not paid at Closing, the Debtor shall make all distributions of Plan Assets required after the Effective Date under this Plan.  Such distributions shall be made on or about the Effective Date, or as soon thereafter as practicable (unless otherwise provided herein or ordered by the Bankruptcy Court).  The Debtor, in its discretion, may establish reserves for Disputed Claims or undetermined Claims, and defer or delay

distributions to ensure an equitable and ratable distribution to holders of Allowed Claims, in accordance with the terms of this Plan.

B.    Disputed Payments or Distributions.   In the event of any dispute between or among Claimants as to the right of any Person to receive or retain any distribution to be made to such Person under this Plan, the Debtor may make it instead into a reserve for payment or distribution as ordered by the Bankruptcy Court or as the interested parties to such dispute may otherwise agree among themselves.  Any Claimant which fails to raise such dispute by filing an appropriate request for relief with the Bankruptcy Court prior to the issuance of such disputed distribution by the Debtor shall be deemed to have forever waived any right to dispute such distribution or to restrict the use of such distribution.

C.    Minimum Distribution.  Notwithstanding anything to the contrary in this Plan, the Debtor shall not be required to make aggregate distributions of less than $25.00 to any holder of an Allowed Unsecured Claim, unless the Debtor elects to do so.

D.    Setoff.   The Debtor may set off any claims of any nature whatsoever that the Debtor or the Estate may have against a Claimant, such Claimant's Claim or the payment or distribution to be made pursuant to this Plan with respect to such Claimant's Claim. Notwithstanding the foregoing, the failure to affect such a setoff will not constitute a waiver or release by the Estate or the Debtor of any such claim against such holder.

E.    Interest on Claims.  Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Unsecured Claim.

F.    Further Authorizations.  The Debtor, if and to the extent necessary, may seek such orders, judgments, injunctions and rulings that any of them deems necessary to further carry out the intentions and purposes of, and give full effect to the provisions of, this Plan.

G.    Termination of the Estate.  After the Final Classes 3 and 4 Distribution Date, and the preparation and filing of any tax returns required of the Estate, the Debtor shall effectuate the dissolution of the Debtor in accordance with this Plan, be discharged and have no further responsibilities or duties. After the Final Classes 3 and 4 Distribution, the Debtor shall file a final report with the Court and request that the Case be closed.

H.    Directors and Officers.  The existing officers and the board of directors of the Debtor (or its duly elected or appointed replacements) shall cease to serve in its current capacities at 11:59 p.m. on the Effective Date.  On the Effective Date, the term of the then current officers and board of directors of the Debtor shall expire and the position of each officer and director shall terminate.  From and after such time, the following shall be deemed to be all of the officers and directors of the Debtor:

Development Enterprises, Inc, General Partner of Debtor, as Sole Manager of Debtor

FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF THE
DEBTOR'S PLAN OF REORGANIZATION, DATED DECEMBER 9, 2010

-26-

# XII.
# TREATMENT OF EXECUTORY CONTRACTS
# AND UNEXPIRED LEASES

**A.      Assumption of Contracts and Leases.**

Pursuant to 11 USC §365, all commercial leases with the Debtor's tenants shall be deemed assumed as of the Effective Date, unless the applicable Executory Contracts and Leases have previously been assumed and assigned or rejected by order of the Bankruptcy Court. Rejection of any Executory Contract or Lease shall be pursuant to the terms of the Confirmation Order unless the applicable Executory Contracts and Leases have previously been assumed and assigned or rejected by order of the Bankruptcy Court or as a matter of law**.**

# XIII.
# CONDITIONS TO EFFECTIVENESS OF THE PLAN

**A.      Conditions Precedent to Effectiveness**

The Plan will not become effective unless and until the following conditions have occurred or been waived in writing by the Debtor:

1.      The Bankruptcy Court shall have entered the Confirmation Order in a form and substance satisfactory to the Debtor; and

2.      The Confirmation Order shall have been entered on the Court's docket and shall be unstayed.

# XIV.
# EFFECTS OF PLAN CONFIRMATION

A.      <u>Satisfaction, Release and Discharge of Claims</u>.   The Confirmation of this Plan shall discharge the Debtor and its property or assets from all Claims that existed or arose before the Confirmation Date and extinguish completely all liabilities in respect of any Claim or other obligation or Equity Interest, whether reduced to judgment or not, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that existed or arose from any agreement of the Debtor entered into or obligation of the Debtor incurred before the Confirmation Date, or from any conduct of the Debtor prior to the Confirmation Date, or that otherwise existed or arose prior to the Confirmation Date, including, without limitation, all interest, if any, on any such Claims, Equity Interests or obligations, whether such interest accrued before or after the Petition Date, and including, without limitation, any liability of the kind specified in Sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not a Proof of Claim is filed or deemed filed under Section 501 of the Bankruptcy Code, such Claim is allowed under Section 502 of the Bankruptcy Code, or the holder of such Claim accepted this Plan.  The treatment of and consideration to be received by holders of Allowed Claims or Equity Interests pursuant to this Plan are in full satisfaction, settlement, discharge, and release of and in exchange for such holders' respective Claims against or Equity Interests in the Debtor and the Estate.

B.      Injunction.  Except as otherwise specifically provided in this Plan or in the Confirmation Order, if the Effective Date occurs, the Confirmation Order shall be deemed to permanently enjoin all Persons that have held, currently hold or may hold a Claim against, or be owed obligations by, the Debtor or the Estate or any Representative of the Debtor or the Estate, or who have held, currently hold or may hold an Equity Interest in the Debtor, from taking any of the following actions on account of such Claim or Equity Interest: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives; (iii) creating, perfecting or enforcing in any manner, directly or indirectly, any lien, charge, encumbrance or other Lien of any kind against the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives; and (v) proceeding in any manner, directly or indirectly, in any place whatsoever against the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives.

C.      No Liability for Solicitation or Participation.  Pursuant to Section 1125 of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under or in connection with this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

D.      Releases and Limitation of Liability of Exculpated Persons.  The Exculpated Persons shall not have or incur any liability to any Person for any act taken or omission made in good faith in connection with or in any way related to negotiating, formulating, implementing, confirming, or consummating this Plan, the First Amended Disclosure Statement or any contract, instrument, filing with governmental agencies, release, or other agreement or document created in connection with or related to this Plan, any prior plan or disclosure statement of the Debtor, or the administration of the Bankruptcy Case, nor with respect to any liability, claim or cause of action, whether known or unknown, asserted or unasserted, belonging to or assertable by the Debtor or the Estate against the Exculpated Persons, from the beginning of time until the Effective Date.  The Exculpated Persons shall have no liability to any Person for actions taken in good faith under or relating to this Plan or in connection with the administration of the Bankruptcy Case including, without limitation, failure to obtain confirmation of this Plan or to satisfy any condition or conditions precedent, or waiver of or refusal to waive any condition or conditions precedent to Confirmation or to the occurrence of the Effective Date.  Further, the Exculpated Persons shall not have or incur any liability to any Person for any act or omission in connection with or arising out of their administration of this Plan, except for gross negligence or willful misconduct as determined by the Bankruptcy Court.

E.      Term of Injunctions and Stays.  Unless otherwise specifically provided in this Plan or the Confirmation Order, all injunctions or stays provided for in the Bankruptcy Case pursuant to

sections 105, 362 or 524 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

F.      No Liability for Tax Claims.  Unless a taxing authority has asserted a Claim against the Debtor before the Bar Date established therefor, no Claim of such authority shall be Allowed against the Debtor or the Estate for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor or any other Entity to have paid taxes or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

**XV.**
**CONFIRMABILITY OF THE PLAN AND CRAMDOWN**

The Debtor requests Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code if any impaired Class does not accept the Plan pursuant to Section 1126 of the Bankruptcy Code.  In that event, the Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code requires modification.

**XVI.**
**FEASIBILITY OF THE PLAN**

**A.      Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successors to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.  The Plan proposed by the Debtor provides for a sale of the Debtor's Property and a distribution of Cash to creditors in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan.  The ability of the Debtor to make the Distributions described in the Plan does not depend on future earnings of the Debtor.  Accordingly, the Debtor believes that the Plan is feasible and meets the requirements of Section 1129(a)(11) of the Bankruptcy Code.

**B.      Alternatives to Confirmation of the Plan**

There are three possible consequences if the Plan is rejected or if the Bankruptcy Court refuses to confirm the Plan: (a) the Bankruptcy Court could dismiss the Debtor's Chapter 11 bankruptcy case, (b) the Debtor's Chapter 11 bankruptcy case could be converted to a liquidation case under Chapter 7 of the Bankruptcy Code, or (c) the Bankruptcy Court could consider an alternative plan of reorganization proposed by some other party.

**1.      Dismissal**

If a Debtor's bankruptcy case were to be dismissed, the Debtor would no longer have the protection of the Bankruptcy Court and the applicable provisions of the Bankruptcy Code. Dismissal would force a race among the creditors to the courthouse to attach the process of the

sale (after payment of secured creditors). In the event of dismissal, even the most diligent unsecured creditors would likely fail to realize any significant recovery on their claims.

## 2.     Chapter 7 Liquidation

If the Plan is not confirmed, it is possible that the Debtor's Chapter 11 case will be converted to a case under Chapter 7 of the Bankruptcy Code, in which a trustee would be elected or appointed to distribute the proceeds of the sale to creditors in accordance with the priorities established by the Bankruptcy Code. Whether a bankruptcy case is one under Chapter 7 or Chapter 11, secured creditors, Administrative Claims and Priority Claims are entitled to be paid in cash and in full before unsecured creditors receive any funds.

If the Debtor's Chapter 11 case were converted to Chapter 7, the present Priority Claims may have a priority lower than priority claims generated by the Chapter 7 case, such as the Chapter 7 trustees' fees or the fees of attorneys, accountants and other professionals engaged by the trustee.

The Debtor believes that liquidation under Chapter 7 would result in significant delay and far smaller distributions being made to Creditors than those provided in the Plan. Conversion to Chapter 7 would give rise to additional delay and administrative expenses involved in the appointment of a trustee and attorneys and other professionals to assist such trustee. In a Chapter 7 liquidation, it is likely that general unsecured creditors would receive a significantly smaller, if any, distribution on their claims.

## 3.     Confirmation of an Alternative Plan

If the Plan is not confirmed, it is possible that a third party would file and pursue confirmation of an alternative plan. However, the Debtor does not believe an alternative plan could differ materially from the Debtor's Plan.

## XVII.
## RISK FACTORS

Holders of Claims against the Debtor should read and consider carefully the information set forth below, as well as the other information set forth in this First Amended Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference), prior to voting to accept or reject the Plan. This information, however, should not be regarded as the only risks involved in connection with the Plan and its implementation.

The Holders of Class 3 and Class 4 Claims are subject to the risk of dilution if the amount of Claims is higher than has been estimated. The Holders of such Claims are also subject to the risk of dilution if the disposition of the assets generates lower proceeds than estimated or if the Estate incurs higher administrative expenses than expected. A number of Disputed Claims are material, and the total amount of all Claims, including Disputed Claims, may be materially in excess of the total amount of Allowed Claims assumed in the development of the Plan. The actual amount of Allowed Claims may differ significantly from the estimates set forth herein. Accordingly, the amount of distribution that will ultimately be received by any particular Holder of an Allowed Class 3 or Class 4 Claim may be adversely affected by the aggregate amount of all

Allowed Claims in that particular case.  Consequently, distributions to Holders of Allowed Class 3 and Class 4 Claims under the Plan will be made, as provided in the Plan, on an incremental basis until all Disputed Claims in that particular case have been resolved.

# XVIII.
# CERTAIN FEDERAL INCOME TAX CONSEQUENCES

## A.    Certain Material Federal Income Tax Consequences of the Plan

The following discussion summarizes certain material federal income tax consequences of the implementation of the Plan to the Debtor and to certain holders of Allowed Claims.  This summary does not address the federal income tax consequences to (i) holders of Claims who are deemed to have rejected the Plan in accordance with the provisions of Section 1126(g) of the Bankruptcy Code, (ii) holders whose Claims are entitled to payment in full in cash or are otherwise unimpaired under the Plan (i.e., holders of Allowed Administrative Expense Claims, Allowed Priority Claims, Secured or Unsecured Claims of the Senior Lenders and Other Secured Claims), or (iii) holders whose Claims are extinguished without distribution in exchange therefore (i.e., Intercompany Claims and Equity Interests).

This summary is based on the Internal Revenue Code of 1986, as amended (the "IRC"), existing and proposed treasury regulations promulgated thereunder ("Treasury Regulations"), judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service ("IRS") as in effect on the date hereof, all of which are subject to change, possibly on a retroactive basis.  Any such change could significantly affect the federal income tax consequences described below.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan.  Thus, no assurance can be given as to the interpretation that the IRS will adopt.  In addition, this summary does not address state, local or foreign income or other tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, financial institutions, thrifts, small business investment companies, regulated investment companies, tax-exempt organizations, certain expatriates, or former long term residents of the United States, or pass-through entities or investors in pass-through entities).

# XIX.
# CONCLUSION

This First Amended Disclosure Statement has attempted to provide information regarding the Debtor's Estate and the potential benefits that might accrue to holders of Claims against and Interests in the Debtor under the Plan as proposed.  The Plan is the result of extensive efforts by the Debtor, its advisors, and management to provide the creditors with a meaningful dividend. The Debtor believes that the Plan are feasible and will provide each holder of a Claim or Interest against the Debtor with an opportunity to receive greater benefits than those that would be received by any alternative plan or sale of the business to a third party.  The Debtor, therefore, hereby urges you to vote in favor of the Plan.

Whether or not you expect to attend the Confirmation Hearing, which is scheduled to commence on _____, 2010, at __:00 __.m. Houston Central Time, in Courtroom No. 401, 515 Rusk, Houston, Texas, you must sign, date, and mail your ballot as soon as possible for the purpose of having your vote count at such hearing.  All votes must be returned to: James B. Jameson, James B. Jameson & Associates, P.C., 2211 Norfolk Street, Ste. 1150, Houston, Texas  77098, as indicated on the Ballot on or before 5:00 p.m., Central Time, on _____, 2010.  Any ballot which is illegible or which fails to designate an acceptance or rejection of the Plan will be counted as a vote in favor of the Plan.

Dated: December 9, 2010

I-10 BARKER CYPRESS, LTD.

By:   /s/ Peyton Cottrell_____
        Peyton Cottrell, President of Development
        Enterprises, Inc., General Partner

JAMES B. JAMESON

By:   /s/ James B. Jameson_____
        JAMES B. JAMESON
        State Bar No. 10598500
        P. O. Box 980575
        Houston, TX 77098
        713-807-1705-Telephone
        713-807-1710-Facsimile
        jbjameson@jamesonlaw.net
        COUNSEL TO THE DEBTOR AND
        THE DEBTOR-IN-POSSESSION