IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| I-10 BARKER CYPRESS, LTD. | § | CASE NO. 10-36582 |
| Debtor | § | (Chapter 11) |

## DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION

**JAMES B. JAMESON**
State Bar No. 10598500
P. O. Box 980575
Houston, TX 77098
713-807-1705-Telephone
713-807-1710-Facsimile
jbjameson@jamesonlaw.net
**COUNSEL TO THE DEBTOR AND
THE DEBTOR-IN-POSSESSION**

# TABLE OF CONTENTS

PAGE

ARTICLE I      DEFINITIONS AND INTERPRETATION ..................................................... 1

    1.1      Rules of Interpretation .......................................................... 1

    1.2      Definitions............................................................................ 1

ARTICLE II     PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS ................................................................. 1

    2.1      Treatment of Allowed Administrative Expense Claims ..................... 1

    2.2      Bar Date for the Filing and Assertion of Administrative Expense Claims, Including Professional Fees but Excluding Ordinary Course Administrative Claims ........................................ 1

    2.3      ............................................................................................ 2

ARTICLE III    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ................... 2

    3.1      Creation of Classes ............................................................... 2

    3.2      Claims May Be in More Than One Class ................................. 2

ARTICLE IV     IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN .................................................................. 2

    4.1      Classes of Claims Not Impaired ............................................ 2

    4.2      Impaired Classes of Claims ................................................... 2

    4.3      Impairment Controversies...................................................... 2

ARTICLE V      PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS.................................................... 3

    5.1      Class 1 – Priority Claims and Pre-Petition Ad Valorem Tax Claims .................... 3

    5.2      ............................................................................................ 3

    5.3      ............................................................................................ 3

    5.4      ............................................................................................ 3

    5.5      Class 2 – Secured Claim of Compass Bank............................. 3

        5.5.1............................................................................... 3

        5.5.2............................................................................... 4

        5.5.3…............................................................................ 4

        5.5.4............................................................................... 4

        5.5.5............................................................................... 4

        5.5.6............................................................................... 4

        5.5.7............................................................................... 4

5.5.8...................................................................................................... 4

5.5.9.......................................................................................................... 4

5.5.10.................................................................................................... 4

5.5.11.................................................................................................... 5

5.5.12.................................................................................................... 5

5.5.13.................................................................................................... 5

5.5.14.................................................................................................... 5

5.5.15.................................................................................................... 5

5.5.16.................................................................................................... 5

5.6     Class 3 – Unsecured Claims (Trade Debt Equal to or Less than $1,000).............. 5

5.7     Class 4 – Unsecured Claims (Exceeding $1,000)...................................... 5

     5.7.1.................................................................................................... 6

     5.7.2.................................................................................................... 6

5.8     Class 5 – Pending State Court Litigation Claims......................................... 5

     5.8.1 *Advantage Litigation*............................................................... 6

     5.8.2 *Craft Litigation*......................................................................... 6

     5.8.3 *PAO Litigation*......................................................................... 7

     5.8.4 *Hawkeye Litigation* ................................................................. 7

     5.8.5.................................................................................................... 8

     5.8.6.................................................................................................... 9

5.9     Class 6 – Equity Interests............................................................................. 9

5.10    Allowance of Unliquidated or Contingent Claims........................................ 9

ARTICLE VI       ACCEPTANCE OR REJECTION OF THIS PLAN ..................................... 9

6.1     Classes and Claims Entitled to Vote .......................................................... 9

6.2     Cramdown........................................................................................................ 9

ARTICLE VII       PROCEDURES FOR RESOLVING AND TREATING CONTESTED
                  AND DISPUTED CLAIMS UNDER THIS PLAN ..................................... 10

7.1     Responsibility for Objecting to Claims...................................................... 10

7.2     Objections to Claims..................................................................................... 10

7.3     Filing and Assertion of Claims .................................................................. 10

7.4     No Distributions Until Claim is an Allowed Claim.................................... 10

7.5     Voting ............................................................................................................... 10

7.6     Prohibition on Distributions Attributable to Claims While Any Avoidance Litigation is Pending ......................................................................................... 11

ARTICLE VIII     IMPLEMENTATION ........................................................................ 11

8.1     Sale of Assets of Debtor, Free & Clear of All Liens, Claims & Encumbrances, Pursuant to 11 U.S.C. §363 ........................................ 11

8.2     ......................................................................................................... 11

8.3     ......................................................................................................... 11

8.4     Proceeds of Sale of Assets of Debtor ........................................... 11

8.5     Vesting of Property of the Estate in the Debtor ........................... 11

ARTICLE IX     PROSECUTION OF LITIGATION CLAIMS TO FUND CLASSES 3 AND 4 ........................................................................................... 12

9.1     ......................................................................................................... 12

ARTICLE X     MANNER OF DISTRIBUTION AND PROVISION FOR TREATMENT OF CLAIMS AND SETOFFS ................................. 12

10.1     Distribution Procedures ................................................................. 12

10.2     Disputed Payments or Distributions ............................................ 12

10.3     Minimum Distribution ................................................................... 12

10.4     Setoff .............................................................................................. 12

10.5     Interest on Claims .......................................................................... 13

10.6     Further Authorizations ................................................................... 13

10.7     Termination of the Estate ............................................................... 13

10.8     Directors and Officers .................................................................... 13

ARTICLE XI     EXECUTORY CONTRACTS AND LEASES ............................. 13

11.1     Assumption of Contracts and Leases ............................................ 13

ARTICLE XII     CONDITIONS PRECEDENT ......................................................... 13

12.1     Conditions Precedent to Effectiveness .......................................... 13

ARTICLE XIII     EFFECTS OF PLAN CONFIRMATION ....................................... 14

13.1     Satisfaction, Release and Discharge of Claims ............................ 14

13.2     Injunction ....................................................................................... 14

13.3     No Liability for Solicitation or Participation ................................ 14

13.4     Releases and Limitation of Liability of Exculpated Persons ....... 15

13.5     Term of Injunctions and Stays ...................................................... 15

13.6     No Liability for Tax Claims .......................................................... 15

ARTICLE XIV    MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS
               PLAN ............................................................................................................ 15

    14.1   Modification of this Plan ............................................................................ 15

    14.2   Revocation or Withdrawal of this Plan ...................................................... 16

ARTICLE XV     RETENTION OF JURISDICTION ............................................................ 16

    15.1   Jurisdiction of Bankruptcy Court ............................................................... 16

    15.2   Failure of Bankruptcy Court to Exercise Jurisdiction ............................... 17

ARTICLE XVI    DEFINITIONS ......................................................................................... 17

ARTICLE XVII   MISCELLANEOUS PROVISIONS ......................................................... 22

    17.1   Payment of Statutory Fees ......................................................................... 22

    17.2   Retention of Actions and Defenses ............................................................ 22

    17.3   Payment of Professional Fees .................................................................... 22

    17.4   No Admissions ........................................................................................... 23

    17.5   Plan Controls .............................................................................................. 23

    17.6   Substantial Consummation of Plan ............................................................ 23

    17.7   Successors and Assigns .............................................................................. 23

    17.8   Severability ................................................................................................ 23

    17.9   Notices and Distributions ........................................................................... 23

    17.10  Filing of Documents in Public Record ....................................................... 23

    17.11  Withdrawal of Plan .................................................................................... 23

    17.12  Due Authorization by Creditors ................................................................. 24

    17.13  Filing of Additional Documentation .......................................................... 24

    17.14  Implementation ........................................................................................... 24

    17.15  Pre-petition Lawsuits ................................................................................. 24

    17.16  Governing Law ........................................................................................... 24

    17.17  Defaults ...................................................................................................... 24

    17.18  Binding Effect ............................................................................................ 25

    17.19  Other Documents and Actions ................................................................... 25

CONFIRMATION REQUEST ...................................................................................... 25

## DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION

The Debtor, **I-10 Barker Cypress, Ltd.**, hereby proposes the following First Amended Plan of Reorganization pursuant to the provisions of Section 1121 of the United States Bankruptcy Code.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

1.1     <u>Rules of Interpretation</u>.   Unless otherwise specified, all Section and Article references in this Plan are to the respective Section or Article of this Plan, as the same may be amended, waived or modified from time to time.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Words denoting the singular number shall include the plural number and vice versa.  In construing this Plan, the rules of construction set forth in the Bankruptcy Code or the Bankruptcy Rules shall apply.  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  The words "herein," "hereof," "hereto," "hereunder" and other terms of similar import refer to this Plan as a whole and not to any particular Article, Section, subsection or clause contained in this Plan.  The words "include," "includes," "including," and similar words or phrases shall be deemed to be followed by the phrase "without limitation."

1.2     <u>Definitions</u>.  Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code or the Bankruptcy Rules, have the meanings ascribed to them in the Bankruptcy Code or the Bankruptcy Rules.  Unless otherwise provided in this Plan, the terms defined in Article XV (which appear in this Plan as capitalized terms) have the respective meanings set forth in Article XV, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

## ARTICLE II
## PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

2.1     <u>Treatment of Allowed Administrative Expense Claims</u>.   Each holder of an Allowed Administrative Expense Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Administrative Expense Claim, in Cash, on or as soon as practicable after the later of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and by the Debtor.

2.2     <u>Bar Date for the Filing and Assertion of Administrative Expense Claims, Including Professional Fees but Excluding Ordinary Course Administrative Claims</u>.  All requests for payment or any other means of preserving and obtaining payment of Administrative Expense Claims, other than Ordinary Course Administrative Claims, that have not been paid, released or otherwise settled, including all requests for payment of Professional Fees, must be filed with the Bankruptcy Court and served upon the Debtor no later than the Administrative Expense Claims Bar Date.  Pursuant to Article XV, the Administrative Expense Claims Bar Date shall be thirty (30) days after the Effective Date.  Any request for payment of Administrative Expense Claims

that is not filed by the Administrative Expense Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Estate; provided, however, that Ordinary Course Administrative Claims that were incurred after the Filing Date may be paid in the ordinary course of the Debtor's business and, if not previously paid in the ordinary course of the Debtor's business, shall be paid by the Debtor, or after the Effective Date.

2.3     Any Ad Valorem Taxing Authority shall not be required to file an administrative claim for payment of 2011 taxes against the Debtor's Property.  Such funds shall be escrowed in accordance with the treatment of Class 2.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

3.1     Creation of Classes.  Administrative Expense Claims have not been classified and are excluded from the following Classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.  Pursuant to Section 1122 of the Bankruptcy Code, this Plan classifies the Claims against the Debtor as follows:

| | |
|---|---|
| Class 1 -- | Priority Claims and Pre-Petition Ad Valorem Tax Claims |
| Class 2 -- | Secured Claim of Compass Bank |
| Class 3 -- | Unsecured Claims (Trade Debt Equal to or Less than $1,000) |
| Class 4 -- | Unsecured Claims (Exceeding $1,000) |
| Class 5 -- | Pending State Court Litigation Claims |
| Class 6-- | Equity Interests |

3.2     Claims May Be in More Than One Class.  A Claim (including an Allowed Claim) is part of a particular Class only to the extent that the Claim qualifies within the definition of that Class, and such Claim is part of a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

## ARTICLE IV
## IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS
## THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN

4.1     Classes of Claims Not Impaired.  Class 1 and 5 are not impaired under this Plan.

4.2     Impaired Classes of Claims.  Classes 2, 3, 4, and 6 are impaired under this Plan.

4.3     Impairment Controversies.  If a controversy arises as to whether any Class of Claims or Class of Equity Interests is impaired under this Plan, such Class shall be treated as specified in this Plan unless, prior to Confirmation of this Plan, the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class of Claims or Class of Equity Interests under this Plan.  Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of the Chapter 11 Case.  In addition, the Bankruptcy Court may, in accordance

with §506(b) of the Bankruptcy Code, conduct valuation hearings to determine the Allowed Amount of any Secured Claim.

### ARTICLE V
### PROVISIONS FOR TREATMENT OF CLASSES OF
### CLAIMS AND EQUITY INTERESTS

5.1     Class 1 – Priority Claims and Pre-Petition Ad Valorem Tax Claims. This Class consists of Allowed Claims (i) entitled to priority under §507(a)(1 through 6) of the Code including, but not limited to, the United States Trustee's fees pursuant to Chapter 123 of Title 28 United States Code, Sec. 1930(a) and (ii) Pre-Petition Ad Valorem Tax Claims against the Property (as defined below).  The Allowed Pre-Petition Ad Valorem Tax Claims shall include interest as required by Section 506(b) of the Bankruptcy Code.  Furthermore, the Allowed Class 1 Claims of the taxing authorities shall be entitled to post-petition interest at the statutory rate, until the allowed claim is paid in full.

5.2      To the extent not paid prior to the Effective Date of the Plan, each holder of an Allowed Priority Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Priority Claim, in Cash, on or as soon as practicable after the latest of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; (iii) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor; (iv) such date that is established by Texas statute as the date Ad Valorem Taxes are due and owing; or (v) the date of funding the sale of any Property as defined herein.

5.3      Pursuant to the terms of that certain *Order Approving Sale of Building A* entered by the Court on November 16, 2010, the Debtor anticipates that the proceeds from the sale shall be sufficient to pay the Allowed Class 1 Claims in full.

5.4      The liens securing the payment of the Class 1 Claims shall remain on the Property until the Allowed Class 1 Claims are paid in full.

5.5     Class 2 – Secured Claim of Compass Bank.  Class 2 consists of the Allowed Secured Claim of Compass Bank ("Compass") in the approximate amount of Seventeen Million Two Hundred Sixty-One Thousand Five Hundred Nine and No/100 Dollars (~$17,261,509.00). The collateral securing the Allowed Secured Claim of Compass consists of a certain 83,000 square foot shopping center on 17.2 acres of commercial land located in Houston, Texas (the "Property") belonging to the Debtor.  The Property consists of six (6) free-standing commercial buildings which are described in Exhibit "A" attached hereto.  At present, the Property is eighty percent (80%) leased and has an appraised fair market value of approximately Twenty-Four Million Dollars ($24,000,000.00).  The Debtor contends that Compass is fully secured by its collateral pursuant to 11 U.S.C. §506.

5.5.1     Compass shall have an allowed secured claim in the amount of Seventeen Million Three Hundred Thousand Eight Hundred Sixty-Six and 92/100 Dollars ($17,300,866.92), as of February 9, 2011, with per diem interest accruing

at the rate of $2,155.61384 thereafter until the Effective Date (the "Allowed Class 2 Claim").

5.5.2     Compass shall be paid its Allowed Claim in full, on or before September 1, 2011, or any applicable extension periods as described below (the "Reorganization Period").  During the Reorganization Period, Compass shall not exercise its right to foreclose on the Property, so long as there are no uncured defaults or breaches of this Section

5.5.3     The applicable interest rate accruing on the Allowed Secured Claim of Compass from the Effective Date, during the Reorganization Period, and any applicable extension periods shall be the higher of prime plus one percent (1%) per annum or six percent (6%) per annum but, in no event, shall the interest rate exceed the highest legal rate allowed by law.

5.5.4     The Debtor shall pay to Compass the amount of Seventy Thousand and No/100 Dollars ($70,000.00) on the first (1st) day of each month, beginning March 1, 2011, pursuant to the terms of the Amended Plan or otherwise.  Such payment shall be applied in accordance with the to the Pre-Petition Loan Documents .

5.5.5     The Debtor shall make monthly escrow payments for taxes and insurance during the Reorganization Period.  The escrow account shall be maintained at Compass during the Reorganization Period.

5.5.6     The Debtor shall comply with all provisions in the Deed of Trust, except those provisions requiring payments in different amounts to Compass.

5.5.7     On the fifth (5th) day of each month, during the Reorganization Period, the Debtor shall provide Compass with a monthly operating report, balance sheet, rent roll and copies of any new leases during this time.

5.5.8     Compass may post all or any portion of the Debtor's property for foreclosure on the earlier of August 1, 2011 or the date of any uncured breach of the terms of this Section 5.6 (which terms include all subsections).

5.5.9     Compass may foreclose on all or any portion of the Debtor's property if the Debtor breaches the terms of this Section 5.6 (which terms include all subsections)

5.5.10    Compass and the Debtor agree that the Debtor, and its employees, partners, officers, directors and professionals, shall not hinder or delay (nor shall they encourage anyone to hinder or delay or assist anyone in hindering or delaying) Compass in enforcing its rights pursuant to the terms of this Section 5.2 (including all subsections) by taking or refraining from taking any actions including, but not limited to, the filing of a motion to convert this Chapter 11 case to a Chapter 7 proceeding.

5.5.11    The term of the Reorganization Period may be extended for one (1) month by the payment of One Hundred Twenty Thousand and No/100 Dollars ($120,000.00) on or before September 1, 2011, representing the regular monthly payment of Seventy Thousand and No/100 Dollars ($70,000.00) and an additional payment of Fifty Thousand and No/100 Dollars ($50,000.00) for the first extension ("First Extension Period").

5.5.12    The Debtor shall have the right to a second (2nd) one (1) month extension by the payment of One Hundred Twenty Thousand and No/100 Dollars ($120,000.00) on or before October 1, 2011, representing the adequate protection payment of Seventy Thousand and No/100 Dollars ($70,000.00) and an additional payment of Fifty Thousand and No/100 Dollars ($50,000.00) for the second extension ("Second Extension Period").

5.5.13    The Debtor shall have the right to a third (3rd) one (1) month extension by the payment of One Hundred Twenty Thousand and No/100 Dollars ($120,000.00) on or before November 1, 2011, representing the adequate protection payment of Seventy Thousand and No/100 Dollars ($70,000.00) and an additional payment of Fifty Thousand and No/100 Dollars ($50,000.00) for the third extension ("Third Extension Period").  Compass may post the Property for foreclosure during a First Extension Period, a Second Extension Period and/or a Third Extension Period notwithstanding that there has been no default by the Debtor in the terms of this Section 5.6.  The Reorganization Period shall not extend past November 30, 2011.

5.5.14    The Debtor shall, within ten (10) days of the Effective Date, execute a full release, in a form acceptable to Compass, of Compass and its representatives, employers, officers, directors, subsidiaries and affiliates, including avoidance actions.

5.5.15    Notwithstanding anything contrary to the terms of this Section 5.6 after the expiration of the Reorganization Period and any extensions thereof, Compass may foreclose its liens on and security interests in the real and personal property of the Debtor.

5.5.16    Class 2 is Impaired.

5.6    Class 3 – Unsecured Claims (Trade Debt Equal to or Less than $1,000).  In full satisfaction, release and discharge of, and in exchange for, all of their respective Allowed Unsecured Claims, each holder of an Allowed Unsecured Claim in Class 3, consisting of Trade Debt equal to or less than One Thousand and No/100 Dollars ($1,000.00), shall receive payment on or before thirty (30) days after the Effective Date in an amount equal to one hundred percent (100%) of the Allowed Claim of each Unsecured Claimant in Class 3.  Class 3 is Impaired.

5.7    Class 4 – Unsecured Claims (Exceeding $1,000).  In full satisfaction, release and discharge of, and in exchange for, all of their respective Allowed Unsecured Claims, each holder of an Allowed Unsecured Claim in Class 4, consisting of Unsecured Claims exceeding One

Thousand and No/100 Dollars ($1,000.00), shall receive payment in full, but in two (2) installments.  The first (1st) installment shall be made thirty (30) days after the Effective Date in an amount equal to fifty percent (50%) the Allowed Claim of each Unsecured Claimant in Class 4.  The balance of the Claim shall be paid one hundred eighty (180) days after the Effective Date of the Plan.

      5.7.1    <u>Alternatively, if a holder of an Allowed Class 4 Claim elects to reduce its claim to seventy-five percent (75%) of its Allowed Claim, it shall be paid ten (10) days after the Effective Date.</u>

      5.7.2    Class 4 is Impaired.

    5.8    <u>Class 5 – Pending State Court Litigation Claims.</u>  On the Petition Date, the Debtor was a party (in some instances a Plaintiff or Counter-Defendant) to several litigation matters, pending in various state courts (the "Litigation Claims").  The pending Litigation Claims in Class 5 are as follows:

      5.8.1    *Cause No. 2008-20882; Advantage Electric, Inc. v. Bally Total Fitness Corp., RH Construction, Inc., and I-10 Barker Cypress, Ltd., f/k/a Bally West, Ltd.; and RH Construction, Inc. v. Bally Total Fitness Corp; In the 281st Judicial District Court of Harris County, Texas* (the "Advantage Litigation").

The Plaintiffs in the Advantage Litigation are seeking affirmative relief from Defendants for damages of approximately One Hundred Five Thousand Dollars (~$105,000.00) and the imposition and foreclosure of a lien on Debtor's property.  Bally Total Fitness Corp. ("Bally") has acknowledged, in writing, its duty to indemnify the Debtor in the case, but has not yet reimbursed the Debtor for any fees and expenses incurred in defending the Advantage Litigation.  The Debtor reserves the right to prosecute the indemnity claims against Bally and seek all affirmative remedies against the other Defendants.

The Debtor disputes the validity or priority of the constitutional liens against the Property.  However, to the extent the Plaintiffs establish a valid lien against the Property, in a Court of competent jurisdiction, the liens shall be in the same priority as their pre-petition liens, if any.  Furthermore, the Debtor may assign all of its indemnity rights from Bally and any rights of a Cross/Counter or Third Party Plaintiff against Bally to Advantage Electric, Inc. or to Advantage Electric, Inc. and R.H. Construction, Inc., in full and complete satisfaction and release of the Debtor.  However, the Debtor's representatives shall comply with discovery and have representatives available to appear at trial, as necessary, to enforce any indemnification rights, affirmative claims or as a fact witness.

      5.8.2    *Cause No. 2009-79393; I-10 Barker Cypress, Ltd. v. Brian Craft; and Brian Craft v. I-10 Barker Cypress, Ltd; In the 234th Judicial District Court of Harris County, Texas* (the "Craft Litigation").

In the Craft Litigation, the Debtor filed suit against Defendant, Brian Craft ("Craft"), in order to recover damages for breach of a lease of certain space in the

Debtor's Property.  Craft then filed a counter-claim for misrepresentation.  A trial is currently set in the Craft Litigation for January, 2011.

5.8.3    *Cause No. 2010-27497; I-10 Barker Cypress, Ltd. v. Patrick A. Onyenaucheya; and Patrick A. Onyenaucheya, Pro Se v. I-10 Barker Cypress, Ltd.; In the 151st Judicial District Court of Harris County, Texas* (the "PAO Litigation").

The PAO Litigation arose following the wrongful filing of a mechanic's lien affidavit by the Defendant, Patrick A. Onyenaucheya ("PAO").  The Debtor filed suit in order to remove the lien and the Defendant, PAO, filed a counter-claim for misrepresentation.  Prior to the Petition Date, the Debtor filed its *Motion for Summary Judgment* in the PAO Litigation and, on August 27, 201, the 151st Court granted a final summary judgment to the Debtor.  The Defendant, PAO, has since appealed that final summary judgment and the Debtor will need proposed special counsel to defend and prosecute all affirmative claims in the appeal.  The summary judgment entered by the 151st Court also included attorney's fees incurred by the Debtor and a conditional award for successful defense of any appeal.  Notwithstanding, the Debtor believes that the collectability of such fees is uncertain

5.8.4    *Cause No. 2009-77736; I-10 Barker Cypress, Ltd. v. Hawkeye Interests, LLC, Carol Fensterman and Brent Mollenhauer; In the 152nd District Court of Harris County, Texas* (the "Hawkeye Litigation").

A.  Breach of Lease and Anticipatory Breach of Lease Against Defendant, Hawkeye Interests, L.L.C.:

On August 17, 2006, the Debtor, as Lessor, and Defendant, Hawkeye Interests, L.L.C. ("Hawkeye"), as Lessee, entered into a lease agreement (the "Lease"), for the rental of approximately 2,400 square feet of lease space located on the Property ("Leased Premises").  Thereafter, on December 2, 2008, the Debtor, as Lessor, and Defendant, Hawkeye, as Lessee, entered into a first amendment to lease agreement whereby the lease agreement was amended to reduce base rent.  The term of the lease agreement commenced on May 1, 2008 and expires April 30, 2018.

Pursuant to the terms of the Lease, Hawkeye entered into possession of the Leased Premises, but subsequently failed to pay monthly rentals owed pursuant to the Lease and abandoned the Leased Premises.  As a result, Hawkeye owes the Debtor the amount of One Hundred Twenty-One Thousand Six Hundred Sixty-Three and 10/100 Dollars ($121,663.10) for accrued rentals and repairs to the Leased Premises through May 31, 2010, taking into consideration all lawful offsets and credits.

In an effort to mitigate the Debtor's damages, the Debtor has re-let the Leased Premises to a new tenant for the remainder of the Lease term for

less monthly rentals, commencing June 1, 2010.  The difference in the amount of monthly rentals owed by Hawkeye under the terms of the Lease, and the amount of rentals to be received from the new tenant for the remaining term of the Lease, equals Two Hundred Thirty-One Thousand One Hundred Twenty-Nine and 97/100 Dollars ($231,129.97), taking into consideration a present value factor of six percent (6%) and all lawful offsets and credits.

Additionally, pursuant to the terms of the Lease, Hawkeye owes the Debtor Twenty-Seven Thousand Four Hundred Forty and No/100 Dollars ($27,440.00) for commissions related to the re-letting of the Leased Premises to the new tenant.   As a result, Hawkeye owes the Debtor Two Hundred Fifty-Eight Thousand Five Hundred Sixty-Nine and 97/100 Dollars ($258,569.97) for anticipatory breach of the Lease, plus the accrued rent owed above in the amount of One Hundred Twenty-One Thousand Six Hundred Sixty-Three and 10/100 Dollars ($121,663.10) for a total amount of breach of Lease damages of Three Hundred Eighty Thousand Two Hundred Thirty-Three and 07/100 Dollars ($380,233.07).

B.  *Breach of Guaranty to the Lease Against, Defendant, Carol S. Fensterman*:

Carol S. Fensterman ("Fensterman") executed and delivered a Lease Guaranty Agreement to Debtor whereby she unconditionally guaranteed certain obligations of the Lease and was required to make payment of all amounts due and owing under the terms of the Guaranty and Lease. However, Defendant, Fensterman, has failed and refused and continues to fail and refuse to make payment pursuant to the terms of the Guaranty and/or Lease and as a result owes the Debtor damages in the amount of One Hundred Fifty-Eight Thousand Three Hundred Six and 40/100 Dollars ($158,306.40).

C.  *Conversion and Exemplary Damages Against Defendant, Brent Mollenhauer*:

Defendant, Brent Mollenhauer ("Mollenhauer"), wrongfully removed furniture, fixture, and equipment ("FF&E") from the Leased Premises and damaged the Leased Premises, in direct violation of the Lease.   The measure of damages for Defendant, Mollenhauer's wrongful retention of the FF&E and damages to the Leased Premises is the value of the FF&E when converted and repairs to the Leased Premises.   At this time, the amount of the replacement value of the FF&E and repairs to the Leased Premises is believed to be Fifty-Six Thousand Two Hundred Seventy and No/100 Dollars ($56,270.00).

5.8.5   The Pending State Court Litigation Claims have been stayed pursuant to 11 U.S.C. §362, and no request to lift the automatic stay has been filed.  Until such time

as the Allowed Claims in Class 5 are adjudicated (either through the pending state court litigation or the claims objection process before the Bankruptcy Court,) the holders of such claims shall receive no distributions under the Plan.  The Debtor reserves all rights of setoff in connection with any and all Class 5 claims.

5.8.6.   Class 5 is Unimpaired and shall receive no distributions under the Plan.  In the event that it is determined that a holder of a Class 5 Claim has an Allowed Claim, (after all setoffs and credits to the Debtor) such Allowed Claim shall be paid in accordance with the treatment of Class 4 creditors.

5.9      Class 6 – Equity Interests.  On the Effective Date, all Equity Interests shall be cancelled and extinguished.   New shares of stock shall be issued to the holders of Equity Interests. However, until all superior classes of claims are satisfied, holders of Class 6 Equity Interests shall not receive or retain distributions or dividends on account of their Equity Interests. Class 6 is Impaired and is deemed to have accepted the Plan.

5.10      Allowance of Unliquidated or Contingent Claims.  Pursuant to Section 502(c) of the Bankruptcy Code, before, on or after the Effective Date, the Claimant or the Debtor may seek the estimation of any Unliquidated Claim or Contingent Claim.   Any estimation of an Unliquidated Claim or a Contingent Claim shall constitute a final determination of the allowed amount of such Claim for all purposes.   To the extent an Unliquidated Claim or a Contingent Claim is estimated by Final Order of the Bankruptcy Court, it shall receive the treatment for the particular type of Claim set forth in this Article V for the amount estimated by the Bankruptcy Court.  Any Unliquidated Claim or Contingent Claim shall be treated as a Disputed Claim until and unless it becomes an Allowed Claim pursuant to a Final Order of the Bankruptcy Court.

**ARTICLE VI**
**ACCEPTANCE OR REJECTION OF THIS PLAN**

6.1      Classes and Claims Entitled to Vote.  Each holder of an Impaired Claim (other than a Claim or Interest that will receive no recovery under this Plan) shall be entitled to vote to accept or reject this Plan.  Classes of Claims not impaired under this Plan shall not be entitled to vote to accept or reject this Plan and shall be presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.   Classes 1 and 5 are not impaired and hence are presumed to have accepted this Plan.  Class 2 is a secured claim to the extent of the value of the collateral and is impaired and therefore is entitled to vote to accept or reject this Plan.  Classes 3 and 4 are impaired and therefore are entitled to vote to accept or reject this Plan.  Class 6, which comprises the holders of Equity Interests, will receive no recovery (unless and until all superior classes of claims are satisfied), is impaired; however, each holder of Equity Interests is deemed to have voted to accept this Plan.

6.2      Cramdown.  If all applicable requirements for confirmation of this Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8), the Debtor shall request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, so long as at least one impaired Class of Claims has accepted this Plan, on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting impaired Class.

## ARTICLE VII
## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND DISPUTED CLAIMS UNDER THIS PLAN

7.1     <u>Responsibility for Objecting to Claims</u>.  Only the Debtor may file objections to Claims after the Effective Date of this Plan.  No other party may file objections to Claims after the Effective Date of this Plan.  The failure of the Debtor prior to Confirmation to object to a Claim for purposes of voting on this Plan shall in no way be deemed to be a waiver of the right of the Debtor to object to such Claim in whole or in part.  The Debtor reserves the right to contest and object to any Claim asserted against the Debtor, including any Claim not listed in the Schedules, listed therein as disputed, contingent and/or unliquidated in amount or listed therein at a lesser amount than asserted in a Proof of Claim.

7.2     <u>Objections to Claims</u>.  The Debtor may reserve (in lieu of payment) for any Claim that the Debtor may, in good faith, dispute and with respect to which they have a right to object pursuant to Section 7.1.  A Claimant whose Claim is the subject of the objection must file with the Bankruptcy Court, and serve upon the Debtor, a response to the objection.  All objections to any Claims shall be filed within ninety (90) days of the Effective Date.  Failure to file and serve a response within the applicable period required by the Bankruptcy Code, Bankruptcy Rules or any order of the Bankruptcy Court shall allow the Bankruptcy Court to enter a default judgment against the non-responding Claimant and thereby grant the relief requested in the objection.  After the Effective Date, the Debtor shall be required to obtain an Order from the Bankruptcy Court to settle and compromise any and all Disputed Claims.

7.3     <u>Filing and Assertion of Claims</u>.  All proofs of claim, and the assertion of any Claim, must be either listed in the Debtor's Schedules or filed by the Bar Date or such Claim shall otherwise be forever barred.  Moreover, any proofs of claim filed after the Bar Date shall be deemed disallowed in full and expunged without any action by the Debtor, unless the Claimant obtains an order of the Bankruptcy Court authorizing a late filing.  Nothing herein shall affect, amend or modify any Bar Date in this Bankruptcy Case.

7.4     <u>No Distributions Until Claim is an Allowed Claim</u>.  Notwithstanding any other provision of this Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim; and no payment or distribution shall be made with respect to a Claim other than an Allowed Claim.  If a Claim that remains a Disputed Claim as of the Effective Date is thereafter Allowed in whole or in part, the Debtor shall make the distributions required by the provisions of this Plan to be made in respect of the Allowed portion of such Claim as and when, and in the installments, if any, required by such provisions; provided that, if and to the extent that such provisions would have required an earlier distribution or distributions had such Claim been Allowed as of the Effective Date, each distribution that would have been made earlier shall be made on the date that such Claim becomes an Allowed Claim, or as soon thereafter as reasonably practicable, or in accordance with the procedures in Article IX.

7.5     <u>Voting</u>.  Holders of Disputed Claims shall not be entitled to vote with respect to this Plan unless such Claims are estimated, for voting purposes, by order of the Bankruptcy Court entered on or prior to the deadline for voting on this Plan.

7.6     Prohibition on Distributions Attributable to Claims While Any Avoidance Litigation is Pending.  The Debtor shall make no distributions upon a Claim held by a Claimant against whom the Debtor asserts any Avoidance Action until resolution of the Avoidance Action by settlement or judgment or as otherwise provided by Bankruptcy Court order.  Avoidance Actions are retained as property of the Debtor under this Plan and such actions may be pursued solely by the Debtor.

## ARTICLE VIII
## IMPLEMENTATION

### SALE OF ASSETS OF THE DEBTOR AND PROCEEDS OF SALE OF ASSETS

8.1     Sale of Assets by the Debtors, Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §363.  It is anticipated that, prior to confirmation of the Plan, the Debtor may have fully satisfied the Ad Valorem Tax Claims in Class 1 and partially satisfied the Allowed Secured Claim of Compass Bank from the sale of Building A, pursuant to the pending Sale Motion.  The Debtor shall sell or transfer the Property to fund the Plan as set forth herein.

8.2     Accordingly, this Plan shall constitute a *Motion to Sell the Remaining Real Estate Properties and Interests Free and Clear of Any Liens, Claims and Encumbrances Pursuant to 11 USC 363 (b)*.  At the time of the filing of this Plan, the Debtor has not negotiated a definitive proposed sale of the remainder of the Property and interests to any third party.  However, in the event a qualified potential purchaser has submitted an acceptable offer to purchase the remainder of the Property (in whole or in part), prior to confirmation, the Debtor shall request approval of such sale at the confirmation hearing.  If a proposed pre-confirmation sale is approved by the Court at confirmation, the purchaser shall be entitled to the protections and benefits of a good-faith purchaser pursuant to 11 U.S.C. §363(m), except for the Class 5 Claim of Advantage Electric, Inc.

8.3     In the event a potential transaction to purchase the remaining real estate properties is negotiated by the Debtor after the Effective Date of the Plan, the Debtor shall seek approval of the Bankruptcy Court to sell such remainder of the Property free and clear of all liens, claims and encumbrances pursuant to 11 USC 363 (b).  In the event a post-confirmation sale is approved by the Court, the purchaser shall be entitled to the protections and benefits of a good-faith purchaser pursuant to 11 U.S.C. §363(m), except for the Class 5 Claim of Advantage Electric, Inc.

8.4     Proceeds of the Sale of Assets of the Debtor.  To the extent not previously paid to the holders of secured claims and administrative claims, the consideration provided for in any sale motion or purchase and sale agreement shall be remitted to the Debtor for distribution pursuant to the terms of this Plan.

8.5     Vesting of Property of the Estate in the Debtor.  On the Effective Date, all remaining property of the Debtor and of the Estate, including all rights to object to Claims, all avoidance actions, causes of action, alter-ego rights, derivative claims, breach of fiduciary duty claims, veil piercing rights, the right to pursue such claims and all other remaining property of

the estate as defined in § 541 of the Bankruptcy Code, shall vest in the Debtor, free and clear of liens, claims and encumbrances, except as otherwise provided in the Plan.

## ARTICLE IX
## PROSECUTION OF LITIGATION CLAIMS TO FUND CLASSES 3 AND 4

9.1     In addition to the sale(s) of the Debtor's Property, the Debtor has engaged special litigation counsel for the Estate in order to prosecute those claims and causes of action against certain parties, referenced in Paragraph 5.4 hereinabove as the Litigation Claims.  A summary of the Debtor's claims and causes of action is described in Paragraph 5.4 and in the Disclosure Statement filed in connection with the Plan.  The special counsel for the Debtor shall continue to prosecute the Litigation Claims for the benefit of Classes 3 and 4.

## ARTICLE X
## MANNER OF DISTRIBUTION AND PROVISION
## FOR TREATMENT OF CLAIMS AND SETOFFS

10.1     Distribution Procedures.  Any payments or distributions to be made by the Debtor to Claimants as required by this Plan shall be made only to the holders of Allowed Claims.  Any payment, delivery or distribution by the Debtor pursuant to this Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Debtor into the United States mail.  Distributions or deliveries required to be made by this Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims.  No payments or other distributions of property shall be made on account of any Claim or portion.

10.2     Disputed Payments or Distributions.  In the event of any dispute between or among Claimants as to the right of any Person to receive or retain any distribution to be made to such Person under this Plan, the Debtor may make it instead into a reserve for payment or distribution as ordered by the Bankruptcy Court or as the interested parties to such dispute may otherwise agree among themselves.  Any Claimant which fails to raise such dispute by filing an appropriate request for relief with the Bankruptcy Court prior to the issuance of such disputed distribution by the Debtor shall be deemed to have forever waived any right to dispute such distribution or to restrict the use of such distribution.

10.3     Minimum Distribution.  Notwithstanding anything to the contrary in this Plan, the Debtor shall not be required to make aggregate distributions of less than Twenty-Five Dollars ($25.00) to any holder of an Allowed Unsecured Claim, unless the Debtor elects to do so.

10.4     Setoff.  The Debtor may set off any claims of any nature whatsoever that the Debtor, or the Estate, may have against a Claimant, such Claimant's Claim or the payment or distribution to be made pursuant to this Plan with respect to such Claimant's Claim. Notwithstanding the foregoing, the failure to affect such a setoff will not constitute a waiver or release by the Estate or the Debtor of any such claim against such holder.

10.5     Interest on Claims.  Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Unsecured Claim.

10.6     Further Authorizations.  The Debtor, if and to the extent necessary, may seek such orders, judgments, injunctions and rulings that any of them deems necessary to further carry out the intentions and purposes of, and give full effect to the provisions of, this Plan.

10.7     Termination of the Estate.  After all Allowed Claims in Classes 3 and 4 are satisfied, and the preparation and filing of any tax returns required of the Estate, the Debtor, in accordance with this Plan, shall be discharged and have no further responsibilities or duties.  The Debtor shall file a final report with the Court and request that the Case be closed.

10.8     Directors and Officers.  The existing officers and the board of directors of the Debtor (or their duly elected or appointed replacements) shall cease to serve in their current capacities at 11:59 p.m. on the Effective Date.  On the Effective Date, the term of the then current officers and board of directors of the Debtor shall expire and the position of each officer and director shall terminate.  From and after such time, the following shall be deemed to be all of the officers and directors of the Debtor:

Development Enterprises, Inc., Manager

## ARTICLE XI
## EXECUTORY CONTRACTS AND LEASES

11.1     Assumption of Contracts and Leases.  Pursuant to 11 USC §365, all commercial leases with the Debtor's tenants shall be deemed assumed as of the Effective Date, unless the applicable Executory Contracts and Leases have previously been assumed and assigned or rejected by order of the Bankruptcy Court.  Rejection of any Executory Contract or Lease shall be pursuant to the terms of the Confirmation Order unless the applicable Executory Contracts and Leases have previously been assumed and assigned or rejected by order of the Bankruptcy Court or as a matter of law.

## ARTICLE XII
## CONDITIONS PRECEDENT

12.1     Conditions Precedent to Effectiveness.  This Plan shall not become effective unless and until the following conditions have occurred or been waived in writing by the Debtor:

12.1.1     The Bankruptcy Court shall have entered the Confirmation Order in a form and substance satisfactory to the Debtor; and

12.1.2     The Confirmation Order shall have become a Final Order entered on the Court's docket and shall be not be subject to a stay by any Court of competent jurisdiction.

## ARTICLE XIII
## EFFECTS OF PLAN CONFIRMATION

13.1     <u>Satisfaction, Release and Discharge of Claims</u>.  The Confirmation of this Plan shall discharge the Debtor and its property or assets from all Claims that existed or arose before the Confirmation Date and extinguish completely all liabilities in respect of any Claim or other obligation or Equity Interest, whether reduced to judgment or not, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that existed or arose from any agreement of the Debtor entered into or obligation of the Debtor incurred before the Confirmation Date, or from any conduct of the Debtor prior to the Confirmation Date, or that otherwise existed or arose prior to the Confirmation Date, including, without limitation, all interest, if any, on any such Claims, Equity Interests or obligations, whether such interest accrued before or after the Petition Date, and including, without limitation, any liability of the kind specified in Sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not a Proof of Claim is filed or deemed filed under Section 501 of the Bankruptcy Code, such Claim is allowed under Section 502 of the Bankruptcy Code, or the holder of such Claim accepted this Plan.  The treatment of and consideration to be received by holders of Allowed Claims or Equity Interests pursuant to this Plan are in full satisfaction, settlement, discharge, and release of and in exchange for such holders' respective Claims against or Equity Interests in the Debtor and the Estate.

13.2     <u>Injunction</u>.   Except as otherwise specifically (for example, the Claim of Advantage Electric, Inc.) provided in this Plan or in the Confirmation Order, if the Effective Date occurs, the Confirmation Order shall be deemed to permanently enjoin all Persons that have held, currently hold or may hold a Claim against, or be owed obligations by, the Debtor or the Estate or any Representative of the Debtor or the Estate, or who have held, currently hold or may hold an Equity Interest in the Debtor, from taking any of the following actions on account of such Claim or Equity Interest: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives; (iii) creating, perfecting or enforcing in any manner, directly or indirectly, any lien, charge, encumbrance or other Lien of any kind against the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives; and (v) proceeding in any manner, directly or indirectly, in any place whatsoever against the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives.

13.3     <u>No Liability for Solicitation or Participation</u>.  Pursuant to Section 1125 of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under or in connection with this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for

violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

13.4    Releases and Limitation of Liability of Exculpated Persons.   The Exculpated Persons shall not have or incur any liability to any Person for any act taken or omission made in good faith in connection with or in any way related to negotiating, formulating, implementing, confirming, or consummating this Plan, the Disclosure Statement or any contract, instrument, filing with governmental agencies, release, or other agreement or document created in connection with or related to this Plan, any prior plan or disclosure statement of the Debtor, or the administration of the Bankruptcy Case, nor with respect to any liability, claim or cause of action, whether known or unknown, asserted or unasserted, belonging to or assertable by the Debtor or the Estate against the Exculpated Persons, from the beginning of time until the Effective Date.  The Exculpated Persons shall have no liability to any Person for actions taken in good faith under or relating to this Plan or in connection with the administration of the Bankruptcy Case including, without limitation, failure to obtain confirmation of this Plan or to satisfy any condition or conditions precedent, or waiver of or refusal to waive any condition or conditions precedent to Confirmation or to the occurrence of the Effective Date.  Further, the Exculpated Persons shall not have or incur any liability to any Person for any act or omission in connection with or arising out of their administration of this Plan, except for gross negligence or willful misconduct as determined by the Bankruptcy Court.

13.5    Term of Injunctions and Stays.   Unless otherwise specifically provided in this Plan or the Confirmation Order, all injunctions or stays provided for in the Bankruptcy Case pursuant to sections 105, 362 or 524 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

13.6    No Liability for Tax Claims.   Unless a taxing authority has asserted a Claim against the Debtor before the Bar Date established therefor, no Claim of such authority shall be Allowed against the Debtor or the Estate for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor or any other Entity to have paid taxes or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

## ARTICLE XIV
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

14.1    Modification of this Plan.   The Debtor may alter, amend or modify this Plan under Section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the substantial consummation of this Plan, any party in interest in the Bankruptcy Case may, so long as the treatment of holders of Claims or Equity Interests under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of this Plan; provided, however, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

14.2     Revocation or Withdrawal of this Plan.  The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If the Debtor revoke or withdraw this Plan prior to the Confirmation Date, this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

## ARTICLE XV
## RETENTION OF JURISDICTION

15.1     Jurisdiction of Bankruptcy Court.     Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case and all matters arising under, arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction allowing it:

15.1.1     To hear and determine motions, applications, adversary proceedings, avoidance actions and contested matters pending on or commenced after the Effective Date;

15.1.2     To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim or Equity Interest, and to enter any order requiring the filing of proof of any Claim or Equity Interest before a particular date;

15.1.3     To ensure that distributions to holders of Allowed Claims are accomplished as provided in this Plan;

15.1.4     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

15.1.5     To construe and to take any action to enforce this Plan and the Confirmation Order;

15.1.6     To issue such orders as may be necessary for the implementation, execution and consummation of this Plan and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order, and the transactions contemplated hereby;

15.1.7     To hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

15.1.8     To hear and determine all applications for Professional Fees;

15.1.9     To hear and determine other issues presented or arising under this Plan;

15.1.10 To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

15.1.11 To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code; and

15.1.12 To enter the Final Decree.

15.2     Failure of Bankruptcy Court to Exercise Jurisdiction.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth above in Section 14.1, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE XVI
## DEFINITIONS

Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.  Unless otherwise provided in this Plan, the following terms (which appear in this Plan as capitalized terms) have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

16.1     "Administrative Expense Claim" means a Claim for costs and expenses of administration of the Bankruptcy Case allowed under Sections 503, 507(a)(2) or 507(b) of the Bankruptcy Code, including Claims for taxes entitled to treatment under Section 507, and approved by Final Order of the Bankruptcy Court, and all fees and costs assessed against the Estate pursuant to 28 U.S.C. § 1930.

16.2     "Administrative Expense Claims Bar Date" means thirty (30) days after the Effective Date.

16.3     "Affiliate" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code and, in addition, shall mean, with respect to any Person, any other Person directly or indirectly controlling (including all directors, officers, managers and general partners of such person, and Persons performing similar functions), directly or indirectly controlled by or under direct or indirect common control with such Person.  For purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative of the foregoing.

16.4     "Allowed" means, as it relates to any type of Claim provided for under this Plan (other than a Disputed, Contingent or Unliquidated Claim), a Claim (i) which has been scheduled as undisputed, noncontingent, and liquidated in the Schedules and as to which (a) no proof of Claim has been Timely Filed, and (b) no objection thereto has been Timely Filed; (ii) as to which

a proof of Claim has been Timely Filed and either (a) no objection thereto has been Timely Filed, or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (iii) which has been expressly allowed (but only to the extent expressly allowed) under the provisions of this Plan or by other order of the Bankruptcy Court; or (iv) which is an Administrative Expense Claim approved by Final Order of the Bankruptcy Court.  Disputed, Contingent, or Unliquidated Claims shall become Allowed Claims only when Allowed pursuant to a Final Order of the Bankruptcy Court.

16.5    "Assets" means all property of the Estate as defined in the Bankruptcy Code.

16.6    "Avoidance Actions" means any and all actions which a trustee, Debtor-in-possession or other appropriate party in interest may assert on behalf of the Estate under applicable state statute or Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553.

16.7    "Bankruptcy Case" means the bankruptcy case initiated by the Debtor when it filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code on August 2, 2010 enumerated as Case No. 10-36582.

16.8    "Bankruptcy Code" means Title 11 of the United States Code, Section 101, et seq., as now in effect or as hereafter amended.

16.9    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over this Bankruptcy Case.

16.10    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under Section 2075 of Title 28 of the United States Code, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be modified or amended.

16.11    "Bar Date" means December 1, 2010, the last date set by the Bankruptcy Court for filing claims in this Bankruptcy Case.

16.12    "Business Day" means any day which is not a Saturday, a Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

16.13    "Cash" means lawful currency of the United States of America.

16.14    "Claim" means a claim against the Debtor, or its property, as such term is defined in Section 101(5) of the Bankruptcy Code.

16.15    "Claimant" means the holder of any Claim against the Debtor, or its property, or of any Equity Interest.

16.16    "Class" means a category of Claims or Equity Interests, as classified in Article III of this Plan.

16.17    "Closing" (also known as the "Effective Date") means, and shall occur ten (10) days after the Confirmation Order becomes a Final Order.  Notice of the Effective Date shall be filed with the Bankruptcy Court.

16.18    "Collateral" means any property or interest in property of the Estate subject to a Lien, not otherwise subject to avoidance under the Bankruptcy Code, to secure the payment or performance of a Claim.

16.19    "Confirmation" or "Confirmation of this Plan" means the approval of this Plan pursuant to Section 1129 of the Bankruptcy Code by the Bankruptcy Court.

16.20    "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

16.21    "Confirmation Hearing" means the hearing(s) before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider Confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

16.22    "Confirmation Order" means the final order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

16.23    "Contingent Claim" means any Claim that has not matured and is dependent upon an event that has not occurred or may never occur.

16.24    "Debtor" means I-10 Barker Cypress, Ltd.

16.25    "Disclosure Statement" means the Disclosure Statement in support of this Plan dated October 29, 2010, including all exhibits, appendices, schedules, and annexes attached thereto, as submitted by the Debtor pursuant to Section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be amended, supplemented, or modified from time to time.

16.26    "Disputed Claim" means any Claim or any portion thereof which has not become Allowed.  For purposes of this Plan, a Claim that has not been Allowed by a Final Order shall be considered a Disputed Claim, whether or not an objection has been or may be Timely Filed, if (i) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules; (ii) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules; (iii) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated; (iv) no corresponding Claim has been scheduled in the Schedules; (v) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof or; (vi) the amount, validity, priority or other rights of the Claim are otherwise being contested.

16.27    "Effective Date" means, and shall occur ten (10) days after the Confirmation Order becomes a Final Order.  Notice of the Effective Date shall be filed with the Bankruptcy Court.

16.28    "Entity" means any corporation, general or limited partnership, limited liability company or partnership, joint venture, association, trust, government agency, body or political subdivision thereof, or unincorporated association, group or body, or other entity.

16.29    "Equity Interest" means any equity interest in the Debtor within the meaning of Section 101(16) of the Bankruptcy Code, and shall include any common stock, preferred stock or other equity or ownership interest in the Debtor, any security or note convertible into or exchangeable for such stock or interest, and any option, warrant or other right to subscribe for or acquire any such stock or interest, each as existing immediately prior to the Effective Date.

16.30    "Estate" mean the Estate created for the Debtor in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

16.31    "Exculpated Person" means the Debtor, on and after the Petition Date, and each of its Representatives.

16.32    "Executory Contracts" means all "executory contacts," as such term is used in Section 365 of the Bankruptcy Code, to which the Debtor was a party as of the Effective Date.

16.33    "Final Decree" means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022.

16.34    "Final Order" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which (i) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

16.35    "Leases" means all "unexpired leases," as such term is used within Section 365 of the Bankruptcy Code, to which the Debtor was a party as of the Effective Date.

16.36    "Lien" means valid and enforceable lien, mortgage, security interest, pledge, charge, encumbrance, or other legally cognizable security device of any kind, which is not subject to avoidance or subordination under the Bankruptcy Code or other applicable law.

16.37    "Ordinary Course Administrative Claim" means any Administrative Claim incurred in the ordinary course of the Debtor's business on and after the Petition Date but shall not include: (i) any Claim for Professional Fees and any expenses, compensation, or reimbursement requested pursuant to subsections 503(b)(2), (3), (4) or (5) of the Bankruptcy Code, which shall be subject to Bankruptcy Court approval; (ii) any taxes (including income, sales, use, property or other taxes incurred subsequent to the Petition Date); (iii) any Claims for breach of contract, tort, or other actionable conduct; and (iv) any post-petition obligations incurred under Executory Contracts or Leases which are rejected pursuant to this Plan or prior to the Effective Date of this Plan.

16.38    "Person" means any person, individual, Entity, or other entity or being of whatever kind, whether or not operating or existing for profit, including, but not limited to, any "person" as such term is defined in section 101(41) of the Bankruptcy Code.

16.39    "Petition Date" means August 2, 2010.

16.40    "Plan" means this Plan of Reorganization of the Debtor, and any amendments, supplements or modifications thereto.

16.41    "Plan Assets" means all property of the Estate, as of the Effective Date after giving effect to distributions or conveyances to be made (or reserves to be established) in respect of the sale or conveyance of assets as provided in Section 5.2 or pursuant to a Court approved asset sale, Administrative Expense Claims, Priority Claims, and all interest and earnings thereon and all other property acquired by or transferred to the Estate after the Effective Date.

16.42    "Plan Documents" means such other documents required to be filed pursuant to this Plan or filed as a Plan Document by the Debtor, which shall be filed on or before ten (10) days before the date of the Confirmation Hearing.

16.43    "Priority Claim" means a Claim entitled to priority in payment under Section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Expense Claim or a Priority Tax Claim.

16.44    "Professional" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

16.45    "Professional Fees" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

16.46    "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor, pursuant to Bankruptcy Rules 3001 or 3002.

16.47    "Representative" means, with respect to any specified Entity, the officers, directors (or the functional equivalent, if any), employees, agents, attorneys, accountants, financial advisors, other representatives, subsidiaries, affiliates or any person who controls any of these within the meaning of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended.

16.48    "Schedules" means the Schedules, Statements and Lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

16.49    "Secured Claim" means a Claim that is (i) secured as provided by Section 506(a) of the Bankruptcy Code, in whole or in part, by a Lien on any assets of the Debtor that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the Collateral securing such Claim; or (ii) subject to

setoff under Section 553 of the Bankruptcy Code, but only to the extent of the amount subject to such setoff.

16.50    "<u>Timely Filed</u>" means, with respect to a Claim, Equity Interest or Administrative Expense, that a proof of such Claim or Equity Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court within such applicable period of time fixed by this Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (e.g., the Bar Date).

16.51    "<u>Unliquidated Claim</u>" means any Claim that is undetermined as to amount.

16.52    "<u>Unsecured Claim</u>" means any Claim that is not an Administrative Expense Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, a Subordinated Claim, an Equity Interest, or an Assumed Liability.

# ARTICLE XVII
# MISCELLANEOUS PROVISIONS

17.1    <u>Payment of Statutory Fees</u>.    All fees payable by the Debtor pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to Section 1128 of the Bankruptcy Code, shall be paid as follows: any outstanding pre-confirmation fees due as of the Effective Date shall be paid on the Effective Date; post-confirmation fees shall be paid as they accrue until this case is converted or closed by the Bankruptcy Court, whichever occurs first.  The Debtor shall submit an affidavit of quarterly disbursements to the United States Trustee until the Debtor's case is converted or closed by the Bankruptcy Court.

17.2    <u>Retention of Actions and Defenses</u>.    All claims, rights, defenses, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estate within the meaning of Section 541 of the Bankruptcy Code, as well as all claims, rights, defenses, offsets, recoupments, and causes of action arising under Chapter 5 of the Bankruptcy Code (including without limitation the Avoidance Actions) with respect to the Debtor, shall be and hereby are preserved for the benefit of the Debtor and shall be and hereby are deemed to be part of the assets of the Debtor.  The foregoing includes, but is not limited to, all claims and causes of action referenced in the Debtor's bankruptcy schedules, statement of financial affairs, and disclosure statement as amended.

17.3    <u>Payment of Professional Fees</u>. Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash, in full, on the Effective Date, or, if such Claim has not been approved by the Bankruptcy Court on or before the Effective Date, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order.  Final fee applications for any Professional Fee Claim that has not been approved as of the Effective Date shall be tiled within forty-five (45) days of the Effective Date and such applications and objections thereto (if any) shall be filed in accordance with and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules and applicable local rules.

17.4     No Admissions.    Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor or be used as the basis of a waiver or estoppel against the Debtor with respect to any matter set forth herein including, without limitation, liability on any Claim or Equity Interest or the propriety of any classification of any Claim or Equity Interest.

17.5     Plan Controls.   To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and this Plan, the terms and provisions of this Plan shall control.

17.6     Substantial Consummation of Plan.    This Plan shall be deemed to be substantially consummated on the Effective Date.

17.7     Successors and Assigns.    The rights, benefits, and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of, such Person.

17.8     Severability.     Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable or illegal or unenforceable as applied to any Claim or Equity Interest, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision.  Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect.

17.9     Notices and Distributions.   All notices, requests and distributions to a holder of a Claim or Equity Interest shall be sent (i) to the last known address of the holder or its attorney of record as reflected in the holder's Proof of Claim or Administrative Expense Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtor.  Any holder of a Claim or Equity Interest may designate another address for the purposes of this Section by providing the Debtor written notice of such address which notice will be effective upon receipt by the Debtor.  All notices, requests, elections and other communications to the Debtor will be deemed given when actually received by the Debtor and must be given by certified mail, postage prepaid, return receipt requested, to: I-10 Barker Cypress, Ltd, 940 Corbindale Road, Houston, Texas 77024, with copies to James B. Jameson, James B. Jameson & Associates, P.C., 2211 Norfolk, Ste. 1150, Houston, Texas 77098.

17.10     Filing of Documents in Public Records. Pursuant to §1146 of the Bankruptcy Code, the issuance, transfer or exchange of a security or the making of an instrument of transfer under this Plan (including without limitation the filing of any mortgage, deed of trust, security agreement, uniform commercial code financing statement or other similar document) shall not be taxed under any law imposing a stamp tax or similar tax.

17.11     Withdrawal of Plan. The Debtor reserves the right to withdraw this Plan at any time prior to the Confirmation Date.  If the Debtor withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date (or the Effective Date) does not occur, then this Plan shall be

deemed null and void.  In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any Claims by or against the Debtor, the Estate or any other person, or to prejudice in any manner the rights of the Debtor, the Estate or any person in any further proceedings involving the Debtor.

17.12    Due Authorization by Creditors.    Each and every Creditor who elects to participate in the Distributions provided for herein (i) warrants that it is authorized to accept, in consideration of its Claim against the Debtor, the Distributions provided for in this Plan; (ii) states that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by him under this Plan; and (iii) indemnifies and holds harmless the Liquidating Debtor, the Plan Agent and their professionals and representatives with respect to such Distributions.

17.13    Filing of Additional Documentation.    On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

17.14    Implementation.    The Debtor shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

17.15    Pre-petition Lawsuits.    On the Effective Date, all lawsuits, litigation, administrative actions or other proceedings, judicial or administrative, relating to pre-petition events or conduct of the Debtor, in connection with the assertion of a Claim, shall be dismissed as to the Debtor.  Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by this Plan.  Confirmation of this Plan and entry of the Confirmation Order shall have no effect on insurance policies of the Debtor.

17.16    Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or by the general corporation law, limited partnership law or limited liability company law or the law of the jurisdiction of organization of any entity governing the internal affairs of such entity, the internal laws of the State of Texas shall govern the construction and implementation of this Plan and any agreements, documents and instruments executed in connection with this Plan or the Bankruptcy case, including the Plan Documents, except as may otherwise be provided in such agreements, documents, instruments and this Plan.

17.17    Defaults.    Any act or omission by a party in interest in contravention of a provision within this Plan shall be deemed an event of default under this Plan.  Upon an event of default, the Debtor may seek to hold the defaulting party in contempt of the Confirmation Order. If such party in interest is found to be in default under this Plan, such party shall pay the reasonable attorneys' fees and costs of the Debtor in pursuing such matter.  Furthermore, upon the finding of such a default by a party in interest, the Bankruptcy Court may (i) designate a party to appear, sign and/or accept the documents required under this Plan on behalf of the defaulting party, in accordance with Federal Rules of Civil Procedure, Rule 70; or (ii) make such other order as may be equitable which does not materially alter the terms of this Plan as it is Confirmed.

17.18    <u>Binding Effect</u>.  This Plan shall be binding on and inure to the benefit of the Debtor, any Purchaser, the holders of Claims or Equity Interests (whether or not they have accepted this Plan) and their respective heirs, executors, administrators, Representatives, successors and assigns.

17.19    <u>Other Documents and Actions</u>.  The Debtor may execute such documents and take such other action as is reasonable, necessary, or appropriate to effectuate the transactions provided for in this Plan.

**CONFIRMATION REQUEST**

The Debtor hereby requests confirmation of this First Amended Plan pursuant to Section 1129 of the Bankruptcy Code.

Dated:  February 10, 2011

**I-10 BARKER CYPRESS, LTD.**

By:    <u>/s/ Peyton Cottrell       </u>
         Peyton Cottrell, President of Development
         Enterprises, Inc., General Partner

**JAMES B. JAMESON & ASSOCIATES, P.C.**

By:    <u>/s/ James B. Jameson       </u>
         James B. Jameson
         State Bar No. 10598500
         P. O. Box 980575
         Houston, TX 77098
         713-807-1705-Telephone
         713-807-1710-Facsimile
         jbjameson@jamesonlaw.net
         **COUNSEL TO THE DEBTOR AND**
         **THE DEBTOR-IN-POSSESSION**

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all parties on the attached Service List via U.S. mail first class, facsimile or ECF notification, *as well as all parties requesting notice via the ECF notification system,* on this 10th day of February, 2011.

Ms. Ellen Hickman
Office of the U.S. Trustee
515 Rusk, Ste. 3401
Houston, TX  77002

Jackson Walker, LLP
Attn: Bruce Ruzinsky
1401 McKinney Street
Houston, TX 77010-1900
bruzinsky@jw.com
*Counsel for Compass Bank*

John P. Dillman
Linebarger Goggan Blair & Sampson, LLP
PO Box 3064
Houston, TX  77253-3064
*Counsel for Harris Cty and Katy ISD*

Glenn J. Deadman
Glenn J. Deadman, P.C.
509 South Main Avenue
San Antonio, TX  78204
gjdeadman@aol.com
*Counsel for RH Construction, Inc.*

J. Scott Douglass
909 Fannin Street, Ste. 1800
Houston, TX  77010
jsd@aol.com
*Counsel for Plaintiff, Advantage Electric*


  /s/ James B. Jameson
James B. Jameson